[No. C. D. 1432. *En Banc.* November 13, 1931.]

*In the Matter of the Proceedings for the Disbarment of* JOHN FRANCIS DORE.[1]

[1]Reported in 4 P. (2d) 1107.

*The Attorney General* and *Lester T. Parker, Assistant,* for the state.

*John F. Dore, T. M. Royce,* and *Rummens & Griffin,* for accused.

HERMAN, J.—This is a disbarment proceeding, the attorney involved (who will be herein referred to as respondent) having been admitted to the practice of law in this state May 18, 1906. A number of complaints, containing an aggregate of six charges of professional misconduct, were brought before the board of law examiners, and hearings on the various charges were held before that body. The board made its report, findings of fact and recommendation, finding respondent guilty on three of the charges and recommending that he be suspended from the practice of law for one year.

The board of law examiners found respondent guilty of unethical conduct in the case of *Penny v. Pedersen.* The facts in connection with this particular case are not in dispute. D. Z. Penny brought an action in the superior court of King county against one Hans Pedersen and others. The action was based on fraud to recover damages for alleged misrepresentations made to the plaintiff in a real estate transaction involving an apartment house lease. At the close of plaintiff's case, the action was dismissed on the defendant's challenge to the sufficiency of the evidence, the trial court holding that there was not sufficient evidence to show that defendant had misrepresented past or present facts, but that all of the evidence showed that statements made by defendant were statements of what might take place in future.

Respondent, as attorney for plaintiff, gave notice of appeal, and caused the reporter to prepare in duplicate a transcript of the testimony, both the original

and the carbon copy being delivered to respondent. He removed page nine of the transcript from both the original and carbon copy, and caused it to be rewritten and altered by adding the following sentence: "Pedersen said he took the figures off his books and gave them to Buckler."

The reporter was not notified of the change. He testified the sentence above quoted did not appear in his notes. Respondent served the proposed statement on opposing counsel, but said nothing about the alteration. Opposing counsel, noticing that page nine was written on different paper, and that it did not have the reporter's name on the lower margin, called in the reporter, checked his notes and discovered the change. Amendments were proposed, and, over respondent's resistance, the trial court struck the added sentence.

The board held correctly that there was a material alteration of the proposed statement of facts. At the hearing before the bar examiners, respondent took the position that it is the legal right of an attorney to make any change in the proposed statement that he believes will honestly present a correct statement of what happened at the trial. The board found respondent guilty of highly unethical conduct, and their finding in this case is one of the findings upon which they recommend suspension for one year.

In the case of *Ex parte St. Raynor* (not officially reported), 70 Pac. 537, the supreme court of Oregon disbarred an attorney who obtained from the court reporter a transcript of such portions of the testimony as he deemed necessary. The lawyer withdrew two typewritten sheets from this transcript and substituted two other sheets which he had caused to be prepared, and from which part of the testimony had been omitted. Opposing counsel discovered the change and called upon the attorney to explain it. After deny-

ing that there had been a change, he finally admitted that the sheets had been rewritten, claiming that it was necessary because they had been mutilated, and that in rewriting the sheets part of the testimony had been inadvertently omitted. The court held that the alteration was material and that it was intentionally made, and ordered the disbarment of the attorney.

That case is readily distinguishable from the case before us. There the court ordered the reporter to prepare and deliver to the attorney a transcript of such testimony as he deemed necessary, and the reporter furnished a certificate to the effect that the same was a true and complete copy of the testimony of the witnesses therein specified. The attorney then procured a stenographer other than his office stenographer, and instructed her to write the two new pages that were to be substituted, telling her to make the same spacing and to commence and finish each line with the same word and syllable as in the original. In the attempt to make the substituted sheets appear as nearly like the reporter's sheets as possible, the stenographer borrowed a typewriter and secured from a typewriter supply house an old ribbon. The lawyer then took the sheets to his office and had his stenographer bind the changed sheets with the other sheets and attached the court reporter's certificate thereto. When questioned by opposing counsel, the attorney first denied he had made any changes, and later tried to explain them. Clearly, the circumstances of the Oregon case cited indicate an attempt on the part of the offender to perpetrate a fraud on the court and on opposing counsel.

In this case, respondent made no attempt to conceal the fact that he had inserted a substituted page. As a matter of fact, opposing counsel noted that page nine did not have the reporter's name on the lower margin,

and thereafter called in the reporter to check his notes. Respondent did not deny that he had made the change, but insisted that accuracy required it. Before being submitted to the trial court for certification, the statement was served on opposing counsel to enable him to propose amendments.

Respondent contended that it was considered a proper and ethical practice by members of the bar of Seattle to make material alterations in proposed statements of facts as furnished by the stenographer before service upon opposing counsel, without informing counsel of the alteration. Evidence in support of that contention was offered by a considerable number of practicing attorneys who often appear before this court, they testifying that it was a common practice by members of the Seattle bar to make material changes in proposed statements of facts, without notice, before service upon opposing counsel. There was no evidence to the contrary, and we must find that such was the practice among members of the bar of the city of Seattle. Respondent made no attempt to conceal or camouflage the change which he made in the transcript of the testimony.

In the absence of evidence that there was an attempt to deceive or mislead, we cannot agree with the finding of the board of bar examiners that respondent's conduct in the case of *Penny v. Pedersen* was such as to merit discipline.

▪ The board found respondent guilty of misconduct in the case of *Marion B. Troyer v. Mervyn B. Troyer*. Respondent was counsel for Mervyn B. Troyer in a divorce case, brought previously by Fannie Z. Troyer, in which an order had been issued restraining Mervyn B. Troyer from disposing of certain stock of the Continental Can Company. An employee of respondent, for whose actions respondent ac-

cepts full responsibility, presented to the superior court of King county a confession of judgment in the case of *Marion B. Troyer v. Mervyn B. Troyer,* upon which Judge Frater entered judgment. At the time the confession of judgment was presented, Judge Frater was not notified that a restraining order was pending prohibiting Mervyn B. Troyer from disposing of the Continental Can Company stock.

Marion B. Troyer was the mother of Mervyn B. Troyer. In her complaint, she claimed that her husband had wrongfully disposed of community property by giving it to Mervyn B. Troyer, and prayed for the return of the stock so disposed of to the community consisting of herself and her husband. Respondent took the position that the restraining order was void, and that Mervyn B. Troyer was not bound by it. Were the restraining order in question valid, respondent and his client might have been guilty of contempt of court for its violation. Respondent contends that, in advising his client that the restraining order was void, he was acting in good faith, which contention is substantiated by the statement appearing in the record that Judge Ronald had said the restraining order was void.

In the absence of evidence which would convince this court that respondent's action in informing his client that the restraining order was void was in bad faith, we cannot find that his conduct in the case of *Marion B. Troyer v. Mervyn B. Troyer* merits disciplinary action.

▪ ██ The board found respondent guilty of unethical conduct in the case of *State v. Rossman.* This finding was based upon a bitter controversy which occurred between respondent, the deputy prosecuting attorney, and some of the state's witnesses. It is not necessary to here set forth the details of the wrang-

ling, which culminated in a verbal castigation of the deputy prosecuting attorney and the witnesses in question by respondent.

In determining that the respondent's conduct in connection with this case did not merit disciplinary action, we are influenced by the attitude of the late Judge Gilliam, who presided at the trial. Judge Gilliam was a judge of long experience, recognized ability and manifest fairness. He did not see fit to cite respondent for contempt because of his conduct in this case, and, by his refusal to take action against him, tacitly manifested his belief that respondent's conduct was not wholly unwarranted. In response to the deputy prosecuting attorney's suggestion, "There is a remedy for those remarks, your honor," Judge Gilliam replied, "Not in this trial."

Under the circumstances, we cannot agree with the findings of the state board of bar examiners, and their recommendation will not be adopted.

MILLARD, BEALS, MAIN, PARKER, and HOLCOMB, JJ., concur.

TOLMAN, C. J., did not hear the oral arguments and, though the case was submitted to him on briefs, he prefers to take no part, since there is not such a division of opinion as to make that necessary.