[No. C.D. 4344.     En Banc.     October 14, 1971.]

*In the Matter of the Disciplinary Proceedings Against* LEONARD W. SCHROETER, *an Attorney at Law.*

*T. M. Royce,* for Board of Governors.

*William L. Dwyer,* for respondent.

PER CURIAM.—Leonard W. Schroeter was admitted to the practice of law in this state on September 30, 1954. Since that time, he has practiced primarily in the Seattle area, although he has also practiced in Alaska and California. Other than this proceeding, there are no disciplinary complaints on his record of practice in Washington.

On June 16, 1969, a formal complaint was filed against Mr. Schroeter at the direction of the Board of Governors. After several days of hearings, at which Mr. Schroeter was present and represented by counsel, the hearing panel made findings and conclusions, and recommended censure as to two items and a 6-month suspension as to the third. The Board of Governors accepted the recommendations of censure, but increased to 1 year the proposed suspension.

Respondent calls our attention to some unusual circumstances in these disciplinary proceedings, asserting these digressions from usual practice constitute a lack of constitutional due process. While the record leaves one with a suspicion that persons outside the disciplinary personnel of the bar may have been motivated by personal ill will to instigate the complaints against respondent, there is nothing in the record that lends substance to the contention that due process was denied in this proceeding. The main item of complaint, together with supporting documentation,

was presented by the bar association of a sister state. Initial proceedings by the local administrative committee were somewhat abridged in this case. The function of the preliminary administrative committee proceeding is to determine whether cause exists for a formal hearing before a trial committee. We think that this preliminary step should be taken in most cases; however, in the particular circumstances of this case, we do not see a denial of due process in the abridgement. Nor do we see an absence of due process in the fact that the state bar officer whose ministerial function is to sign formal complaints, happened, in this instance, to be a partner in the firm which represented defendants in a personal lawsuit brought by Mr. Schroeter. The record shows that Mr. Schroeter was given a full and objective hearing at which he was present and represented. We conclude that there was no denial of due process.

We turn then to the substantive items of complaint. The primary charge is that in July of 1964 respondent altered the transcript of a telephone conversation with a potential medical witness in a malpractice case, so as to give it a meaning opposite to that which was actually said by the witness. The altered transcript was given to opposing counsel in conjunction with settlement negotiations. The complaint also states that, when this matter was subsequently brought to respondent's attention, he took no steps to rectify the misrepresentation.

The gravity of this charge is not to be minimized. In their day-to-day dealings and communications, attorneys must constantly rely upon the candor and trustworthiness of their professional colleagues. Rule 1.1(j) of our Disciplinary Rules for Attorneys states that a ground for discipline is the violation of the Canons of Ethics of the legal profession. Canon 22 states:

> The conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness.
>
> It is not candid or fair for the lawyer knowingly to misquote the contents of a paper, the testimony of a witness . . .

It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents, and in the presentation of causes.

Canon 41 states:

When a lawyer discovers that some fraud or deception has been practiced, which has unjustly imposed upon the court or a party, he should endeavor to rectify it; at first by advising his client, and if his client refuses to forego the advantage thus unjustly gained, he should promptly inform the injured person or his counsel, so that they may take appropriate steps.

*See also* CPE 29 and 32.

Respondent cites the case of *In re Dore*, 165 Wash. 225, 4 P.2d 1107 (1931), wherein no discipline was imposed, as analogous. We disagree. That case involved an unconcealed alteration in a reporter's transcript for a *proposed* statement of facts. There was testimony that this was a common practice of the bar in that jurisdiction and that attorneys in the jurisdiction understood such documents as mere proposals and did not rely upon them as representations of fact. To the contrary, the case at bar involves deliberate misrepresentations of fact in documents perforce relied upon by other members of the bar, with attendant harm to the public. The two cases are not apposite.

Mr. Schroeter admits the substance of the charges, but calls our attention to mitigating factors: his intent to conform the transcript to earlier statements by the same witness; the surrounding disarray in the aftermath of the 1964 Alaska earthquake (the negotiations for settlement were in Alaska with Alaskan counsel); subsequently alleviated psychological stress which impaired his judgment; the eventual absence of serious consequence arising from this misconduct; that this incident was isolated and uncharacteristic; that this incident occurred 7 years ago, and that respondent's conduct has been good and trustworthy before and since that time; and respondent's cooperation and candor during these proceedings.

We agree that these factors should be considered in miti-

gation. We think that they have. But for the mitigating circumstances, the appropriate discipline for so serious a breach of the canons would be more severe. We think that the Board of Governors took these considerations into account, and we adopt the recommendation of a 1-year suspension on this item.

██ A second item of complaint charges that respondent used stationery which was misleading in two respects. First, letterheads indicating multi-state connections named respondent and his partners, but failed to indicate that respondent and his partners were not authorized to practice in the other states. Second, billheads were used which named as partners persons who had since left the firm and discontinued any association with it. These assertions charge a violation of Canon 33 (CPE 33 Partnerships-Names). *See also* American Bar Association Ethics Opinions 115 and 316. The exhibits in this case substantiate these charges. The record also indicates that this is the first time such aberration has been charged against respondent. The practices were brief and have since been discontinued. There is no evidence anyone was victimized by these practices. Respondent emphasizes that the letterheads were prepared by out-of-state attorneys in whom he had placed his reliance, and that he had ordered office personnel to dispose of the billheads and was unaware of their continued use.

██ Such matters, while they should be considered in mitigation, do not erase the fact of violation. Delegation in good faith of professional responsibilities and their implementation cannot relieve an attorney from his professional obligations. Compliance with the Canons of Professional Ethics is a personal duty of each attorney. Practicalities may suggest that mechanical matters be assigned to office staff or that professional colleagues be looked to for suggestions. But in no instance can an attorney delegate the final responsibility of his personal compliance with professional standards.

██ We are satisfied that the hearing panel and Board of Governors took these mitigating circumstances into ac-

count when recommending the discipline to be imposed. A letter of censure is the lightest form of discipline available under our rules. Respondent may complain that informal, nondisciplinary steps would have sufficed. But our rules do not include such informal steps as a matter of right. Rather, they are a matter of common courtesy. We agree that a letter of censure was the appropriate penalty.

■ The final item for which discipline is recommended charges that respondent billed and collected from individual clients, as "costs", amounts exceeding actual expenditure, and that this was done without disclosing the fact of overcharge to the client. Such a billing method would result in a partially disguised fee. We agree with the hearing panel and Board of Governors that such billing method is inconsistent with the statement in CPE 11 that a "lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client," and is a violation of the full disclosure requirement of CPE 38.

The record contains evidence that respondent, having performed work for several clients on a single trip, would post the total cost of the trip to each client's file. Statements for "costs" were rendered to clients on the basis of these postings. The aggregate of such billings exceeded the actual expenses, although it appears that no single client was billed for the full trip costs. Respondent testified that this billing method was used in an effort to make aggregate cost reimbursements more nearly equal to total cost outlays. There was no evidence that respondent actually collected more than he advanced as costs with respect to any trip, and the testimony of the certified public accountant who audited the books was that the firm consistently advanced more for clients' costs than it recouped. The evidence supports the hearing panel's conclusion that respondent had in fact billed as "costs" more than the amount actually expended without disclosure. The record also indicates that the practice of duplicate cost billing is used by attorneys outside the state, that the procedure was recommended to respondent in a law office management seminar,

and that respondent discontinued the practice when his partner questioned it. These are mitigating circumstances. However, they do not justify the deception that inheres in this practice. We agree with the hearing panel and Board of Governors that a letter of censure is appropriate.

We confirm the statement and supplemental statement of costs claimed by the Washington State Bar Association pursuant to DRA 7.1.