[No. C.D. 4795.    En Banc.    June 14, 1973.]

*In the Matter of the Disciplinary Proceeding Against* ARCHIE M. GREENLEE, *an Attorney at Law.*

*Jack P. Scholfield* and *Jon R. Hunt,* for Board of Governors.

*Stern, Gayton, Neubauer & Brucker, P.S.,* and *Gary D. Gayton,* for respondent.

HAMILTON, J.—The Washington State Bar Association brought disciplinary proceedings against Archie M. Greenlee, a Seattle attorney, for alleged acts of misconduct in violation of the Canons of Professional Ethics. A hearing was held before a hearing panel on February 3, 1972, at which time proof was offered in support of seven items of misconduct. The panel found that violations occurred with reference to six items. They recommended that respondent's right to practice law should be suspended for 30 days.

The disciplinary board adopted the findings of fact and conclusions of law of the hearing panel but recommended a 90-day suspension from the practice of law.

Evidence submitted to the hearing panel showed the following violations:

(1) Respondent failed to expeditiously probate a small estate of one Ulysses Smith, who died May 2, 1967, in that he failed to inform his client, Mr. Smith's widow, of the progress of the estate proceedings. Only after a complaint was filed with the Washington State Bar Association did respondent mail the proceeds to his client. The panel found that his conduct violated CPE 21 (Punctuality and Expedition) and CPE 29 (Upholding the Honor of the Profession).

(2) CPE 29 was violated when respondent delivered a $19,955 check for settlement of a personal injury claim to

Francis Smith without having sufficient funds in the Liberty Bank of Seattle to honor the check. He failed to reimburse the bank, which honored the check for payment, until the bank brought an action against him.

(3) Respondent settled an auto accident personal injury claim on behalf of one Bob Church but failed to pay certain medical bills arising from the accident which he had agreed to pay out of the settlement proceeds. The hearing panel held that such action violated CPE 11 (Dealing with Trust Property) and CPE 21, since respondent did not make payments until a complaint was filed with the Washington State Bar Association approximately 1½ years later.

(4) The hearing panel found that respondent violated CPE 29 in neglecting to advise Dr. Wayne Martin, an optometrist, that his client, Francis Smith, refused to pay a bill allegedly owed to Dr. Martin for glasses ordered. Mr. Greenlee had been advised by his client to refuse to pay the bill; however, he did not disclose this information to Dr. Martin, but, instead advised Dr. Martin's secretary that the bill would be paid.

(5) Mr. Greenlee was retained to probate three estates. He failed to expeditiously handle the affairs of the estates and did not reply to numerous inquiries from the Inheritance Tax Division of the Washington State Department of Revenue. The panel found that none of the estates was especially complicated. Respondent's procrastination in probating the matters and his failure to reply to requests for information by the Inheritance Tax Division constituted violations of CPE 21 and 29.

(6) The final item in the complaint involved reprimands that respondent received in 1969 and 1971. On July 18, 1969, Mr. Greenlee received a reprimand for failure to file income tax returns for the years 1960 through 1964, a violation of CPE 29 and 32. On October 22, 1971, he was again reprimanded for not segregating trust funds from his personal account.

■ This court has broad discretion in determining what action should be taken against an attorney who violates the

Canons of Professional Ethics. In making the determination we must consider the seriousness and circumstances of the offense as well as the following standards: (1) a punishment of the offender, which should be sufficient to prevent reoccurrence; (2) a penalty sufficient to deter other practitioners from engaging in such conduct; and (3) punishment sufficient to restore and maintain respect for the honor and dignity of the profession, and to assure those who seek the services of lawyers that the penalties for unprofessional conduct will be strictly enforced. *In re Pennington,* 73 Wn.2d 601, 440 P.2d 175 (1968); *In re Simmons,* 59 Wn.2d 689, 369 P.2d 947 (1962).

The punitive nature of the proceedings, however, must be balanced with the rights that must be extended to the attorney involved. In *In re Little,* 40 Wn.2d 421, 430, 244 P.2d 255 (1952), we defined the burden the bar association must meet and the right that must be extended to the attorney:

> Every doubt should be resolved in his favor, and only upon a clear preponderance of the evidence that the acts charged have been done, and were prompted by improper motives, should disciplinary action be taken. The privilege—and it is a privilege, not a right—to practice his profession cannot be lost to the practitioner upon slight evidence.

We also stated:

> As is true in each case, there are various circumstances applicable to this accused which are urged in mitigation and should be considered. Among these are the motives and purposes which actuated his misconduct and the lack of gravity or serious consequences of it, his attitude toward the proceeding against him, his experience and training, his general characteristics and nature, his previous good record, and the likelihood and probability that he will not again transgress. These subjects of consideration do not excuse improper conduct. They only aid the court in arriving at a fair and moderate determination of the necessary discipline which duty requires it to impose.

In addition to establishing the items of misconduct by a clear preponderance of the evidence, the record reveals

that the respondent was initially admitted to the practice of law in the state of Iowa in June, 1950, and practiced there until 1957, when he determined that he was not earning enough to adequately support his wife and their six sons. He came to Seattle and obtained employment, pending his admission to practice in this state in February, 1958. Thereafter he entered into partnership with another attorney, with offices situated in the central area of Seattle, serving a predominantly minority racial population. The partnership continued until 1961, when the other attorney left the firm. The respondent continued to carry on the firm's business, but, because of the generally minimal resources of his clientele and the expenses attendant upon educating his children and providing care for an illness of his wife, his financial situation deteriorated. Nevertheless, respondent continued to provide legal services for his community and his clientele, and to further the education of his children, one of whom has been admitted to the bar of this state and is currently practicing with respondent, and two others who have or will soon graduate from prominent law schools.

The climax to respondent's financial difficulties appeared to come with the inadvertent deposit[1] of the $19,955 check by the payee, Francis Smith, and a seeming oversight on the part of the bank in honoring it. To meet this and other outstanding obligations respondent liquidated all of his property, including his home, and at the time of the proceeding before the hearing panel was free of debt. Also, with the advent of his son into the office, the internal business management of the firm has been reorganized.

█ It can hardly be gainsaid, however, when considering the improprieties specified in the complaint and found by the hearing panel that the respondent has been ex-

[1]Both respondent and Mr. Smith testified that respondent was fully authorized to interim use of the funds, and that it was agreed between them that the check would not be deposited for collection until respondent approved such deposit. Mr. Smith testified he had unintentionally and mistakenly overlooked obtaining respondent's approval prior to depositing the check.

tremely careless and neglectful in managing his practice. As we pointed out in *In re Hutchins*, 67 Wn.2d 144, 406 P.2d 777 (1965), such omissions, in violation of the Canons of Professional Ethics, cannot be tolerated if the integrity, honor, and public trust of the legal profession are to be furthered and sustained. Since two prior reprimands relating to somewhat similar violations on the part of respondent appear to have gone unheeded, suspension, if not outright disbarment, must follow.

■ Suspension of an attorney from the practice of law is ordinarily not permanent, for implicit in such a penalty is the concept that the attorney is of a character that, upon reentry into the practice, he will faithfully abide by the canons of the profession. The length of the suspension, of course, is dictated to some extent, at least, by the seriousness of the misconduct involved and is aimed at assuring the public that professional misconduct is not to be lightly regarded.

As heretofore noted, in the instant case, the hearing panel who listened to the testimony recommended a 30-day suspension. The disciplinary board, upon reviewing the record, recommended a 90-day suspension. Ordinarily, when confronted by the infractions here presented, including the two previous reprimands, we would be inclined to follow the recommendation of the disciplinary board and impose the longer suspension.

However, as in all disciplinary matters, we deem it appropriate in reaching a suitable disposition, to balance any mitigating circumstances appearing in the record against the seriousness of the infractions. In reaching our conclusion in this case, we have given consideration to the following factors: (a) the general and sometimes legal service characteristics of respondent's practice; (b) his personal and family attributes; (c) the liquidation of his property and the resultant relief from the pressures of financial crisis; (d) the potentially adverse effect of an extended suspension upon his continuing solvency; (e) the fact that his clients suffered primarily from undue delay rather than

fraudulent motive; and (f) the assistance which his son has been able to give to him in reorganizing his office management practices. Weighing these factors against the impact of the established infractions upon the honor and integrity of the legal profession, as well as upon the future practice of respondent, we have concluded that the maximum benefits of a suspension in this case would be accomplished by accepting the recommendation of the hearing panel. Should respondent's future conduct produce additional disciplinary actions, he would be hard put to avoid disbarment.

Accordingly, the respondent will be suspended from the practice of law for a period of 30 days commencing 10 days after the filing of this opinion. Reinstatement to practice will be conditioned upon payment of the costs and expenses of the disciplinary proceeding fixed at $837.51 by the statement of the bar association.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, WRIGHT, UTTER, and BRACHTENBACH, JJ., and RUMMEL, J. Pro Tem., concur.