[No. C.D. 4930.    En Banc.    June 20, 1974.]

*In the Matter of the Disciplinary Proceeding Against*
WILLIAM H. FRASER, *an Attorney at Law.*

*William H. Fraser,* pro se.

*Jack P. Scholfield* and *Jon R. Hunt,* for Bar Association.

ROSELLINI, J.—The Disciplinary Board of the Washington State Bar Association has recommended to this court that the respondent, an attorney at law, be suspended from the practice for a period of 30 days as a result of violations of the Canons of Professional Ethics and/or the Code of Professional Responsibility, which were reflected in two complaints lodged with the Kitsap County Bar Association. The board has recommended that the respondent be censured for his conduct in four other matters which were the subject of complaints.

Since the matters involved in this proceeding arose at a time when the Canons of Professional Ethics governed the conduct of attorneys, in reviewing the findings of the Disciplinary Board, we will refer only to the Canons.

The respondent was admitted to the practice of law in the state of Washington on December 9, 1958. He served for a year as a clerk in this court and thereafter became a deputy prosecutor for Kitsap County, and a part-time private practitioner. He was a partner in the firm of Wallace & Fraser for a period of 9 years and in September 1969 became a sole practitioner. The respondent has previously received a formal reprimand from the Board of Governors for a violation of Canon 21 in neglecting to process a client's claim with punctuality and expedition, as a result of

which the client lost his legal right to claim damages against a third party.

Delay and procrastination were also involved in the complaints which are before us in this proceeding.

One member of the special hearing panel dissented to the findings on four of the complaints, being of the opinion that the respondent's conduct was reasonable under the circumstances.

The four matters with regard to which censure was recommended involved a failure to expedite the client's claim and/or a failure to advise the client of the attorney's evaluation of his claim. One of the two complaints for which a concurrent 30-day suspension was recommended involved the guardianship of an incompetent. The other concerned a fee dispute in a criminal case.

We do not think it necessary to set out in detail the evidence with respect to the complaints for which censure was recommended. They can be summarized as follows:

1. A complaint that the respondent had failed to diligently pursue a claim of the client relating to an automobile collision in which the client's car had been damaged to the sum of $375. Pursuit of this claim was necessarily delayed until primary responsibility for the accident was determined in another lawsuit. After this question was decided, the client urged the respondent to contact the insurer of the responsible party and to endeavor to obtain payment of his claim. While the respondent stated that he did in fact contact a representative of the insurance company, he was unable to show that he had actually done so, since he had no written record of having made any contact. In any event, the client grew anxious because the time was approaching when his claim would be barred by the statute of limitations, and no results had been obtained. He complained to the Bar Association, and at its request the respondent turned the matter over to another attorney who filed suit against the insurer and promptly obtained settlement of the claim in full.

██ The respondent maintained before the hearing panel that he could have and would have achieved the same result himself before the expiration of the period of limitation. We think, however, that the majority of the panel was justified in concluding and the Board of Governors in approving the conclusion that the respondent's long delay in pursuing this matter was not justified and understandably resulted in considerable anxiety on the part of the client. The avoidance of such discomfiture on the part of the client was undoubtedly one of the purposes of CPE 21. We have recognized that procrastination is among those types of conduct condemned by CPE 21 and CPE 29. *In re Greenlee*, 82 Wn.2d 390, 510 P.2d 1120 (1973).

2. A complaint that, the respondent had, in spite of frequent urgings, failed to pursue a client's claim to certain funds alleged to have been given to him by his mother upon her deathbed. It appeared that these funds were in a joint savings account of the complainant's parents, that they had a community property agreement, and that upon the death of the mother the father withdrew the funds and shortly thereafter went to Norway.

The respondent stated that he had concluded that the client's claim was of dubious merit but he felt that if he could sit down and talk with the father, a man he had known for many years, he could persuade him to share some of the proceeds of the savings account with his son. For this reason, he did not advise the client to abandon the claim but rather continued to assure him in the frequent telephone conversations which the client admitted were held, that he would endeavor to talk to the client's father when and if he returned from Norway.

A majority of the hearing panel was apparently of the opinion that the respondent should have answered more of the client's telephone calls, although the client admitted that he had talked to the respondent on numerous occasions, and that the respondent should have advised him that his claim was without merit. The third member of the

panel was of the opinion that the respondent had not violated any of the Canons of Professional Ethics in failing to diligently pursue a claim which was of no merit.

We are inclined to agree with the dissenter with respect to this claim. It does not appear that the client expected to or did in fact pay respondent for the time spent in telephone conversations, and he evidently expected an amount of attention which was not warranted under the circumstances. While an attorney certainly has a duty to respond to his client's efforts to communicate with him, we do not think that he is required to engage in repetitious conversations when he has done all that he can do, as a practical matter, under the circumstances of the particular case. While an attorney is obliged to give conscientious attention to his client's interests and claims, he is not required to give a client more of his time than the client's problem reasonably warrants. We think the evidence on this particular matter falls short of a showing that the respondent violated the Canons of Professional Ethics.

3. A complaint that the respondent had failed to pursue a claim of the clients for a refund of $334.50, which they had paid upon a contract to purchase a dwelling that proved to be uninhabitable. The hearing panel found that the respondent investigated this claim and concluded that the amount in controversy would not justify the time, cost, and risks which would be involved if litigation were undertaken, and that the matter should be dropped. It found, however, that he had neglected to communicate these conclusions to his clients, that while the clients had made numerous attempts to elicit information from the respondent, he at no time advised them that their claim was worthless or that they should seek other counsel if they desired to pursue the matter further.

The hearing panel concluded, and the Board of Governors concurred, that the respondent's conduct in refusing or failing to advise the clients regarding his evaluation of their claim was in violation of CPE 8, which provided that a lawyer is bound to give a candid opinion of the merits

and probable result of pending or contemplated litigation.

The respondent does not question the applicability of the Canon but rather insists that he did so advise the clients. However, the hearing panel was inclined to doubt that he made his position clear, since the clients were still endeavoring to obtain information when their complaint was filed. We think this conclusion of the panel was justified under the circumstances.

4. A complaint that the respondent had failed to expedite the entry of a decree of divorce, contrary to his assurances to his client. The respondent admitted that he had delayed taking the necessary steps to effect the client's wishes, but insisted that he could nevertheless have obtained the decree for her before the date that she desired it. Upon her complaint to the Bar Association, the respondent turned her file over to other counsel and refunded the fee which the client had advanced. The decree of divorce was entered within a reasonable time thereafter.

The hearing panel concluded, one member dissenting, that the respondent undertook no affirmative action with respect to concluding the divorce and failed to reasonably respond to his client's inquiries and requests that action be taken. A violation of CPE 21 was found. We find that the record justifies this conclusion.

As to three of these complaints, then, we are in agreement with the hearing panel and the Board of Governors that the respondent should be disciplined by censure. The conduct involved no moral turpitude but rather negligence. However, the standards of conduct imposed upon attorneys do not excuse negligence in the conduct of a client's affairs, even though no material or monetary damage may result. *See* T. Finman, *Civil Litigation & Professional Responsibility* 115 (1966). An attorney should endeavor to spare the client that frustration and anxiety which must be felt when the client's cause is not pursued with reasonable diligence and promptness.

We think the respondent's conduct in three of the above instances reflects a pattern of delay and equivocation

which should not be condoned. The hearing panel observed that the respondent's problems in this regard can partly be attributed to the fact that he has or had at the time of the incidents in question an extremely heavy workload. We agree with the panel and the board that a heavy workload, in itself, or taken in conjunction with the fact also noted by the panel that the respondent was beset by personal problems, does not justify a failure to attend to the matters which have been entrusted to the attorney's care.

We turn now to the two complaints upon which the board has recommended that the respondent should be suspended for a period of 30 days. We have reviewed the record and find ourselves in disagreement with the conclusions of the hearing panel and the board upon these two matters.

One of the complaints involved an alleged failure of the respondent to account for funds of the client which came into his hands, contrary to the mandate of Canon 11, which provided:

> The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.
>
> Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him.

The record shows that one Larry C. High, who had engaged the services of the respondent upon two previous occasions to give advice to and represent a young woman friend, sought the respondent's services in defense of several criminal charges which had been brought against him. After discussing his case with the respondent, High sent him a government bond in the amount of $150 and filed a form requesting that retirement money to which he was entitled from his former employers be sent in care of the respondent. In the meantime, and before the trial, the respondent sent him a bill for $1,000.

The client was convicted of those charges upon which he was tried and was sentenced to serve a term in the penitentiary at Walla Walla. After he was incarcerated there, the retirement refund check in the amount of $1,671.84 was received by the respondent, who remitted no part of it to the client. The client brought a suit in federal district court, claiming among other things that the respondent was not entitled to retain any of the proceeds of the retirement check or the bond. He also lodged a complaint with the Bar Association, which we have before us now.

The respondent claimed that he was entitled to an attorney fee of $1,500 for his services in defending the client, plus $70 in costs for an investigator, and that he had a right to retain $300 as payment for services rendered to a friend of the client, at his request and upon his promise to pay for the services.

The hearing panel concluded that the respondent was entitled to retain only $1,000 in attorney fees, since that was the amount for which he had billed the client prior to the trial, although it found that $1,500 would not have been an unreasonable charge for the services actually rendered. It apparently included in the $1,000 allowed, the $300 which the client had allegedly agreed to pay for prior services rendered to another person and reimbursement of $70 for the investigator services, which were rendered after the $1,000 invoice was mailed. The panel did not find that the funds were withheld with any fraudulent or dishonest intent.

While the findings do not so state, they reflect a finding that the client had authorized the respondent to retain his attorney fees out of the proceeds of the bond and the retirement check. However, the panel refused to approve the amount of fees withheld.

We are forced to conclude that the panel and the board were in error in deciding the disputed question concerning the amount of fees which the respondent was entitled to withhold. Both parties denied that there was any express contract as to the amount of the fees to be charged. The

respondent stated that he had told the client that the fees could be as much as $1,500, but had indicated that the actual charge would be less if the client was not able to pay that much. The client had told him he was entitled to a retirement refund, but did not know the amount, and that it might be as much as $1,200. The client denied, in his deposition, that any discussion was held regarding fees.

█ We are committed to the general rule that a disciplinary proceeding is not the proper forum in which to resolve disputes as to the right to charge or retain attorney fees, unless it is shown that the amount charged or collected was unconscionable. ABA Comm. on Professional Ethics, Opinions, No. 190 (1939), states at 464:

> It is only when the fees fixed by a lawyer are clearly excessive that the profession has a right to discipline him.

See also V. Countryman and T. Finman, The Lawyer in Modern Society 47 (1966). And see ABA Comm. on Professional Ethics, Opinions, No. 27 (1930), where it is stated:

> The committee will not pass upon questions regarding the amount of an attorney's fee nor upon what constitutes a proper division of fees between attorneys unless the fee is so excessive as to constitute a misappropriation of the client's funds.

In In re Greer, 61 Wn.2d 741, 747, 380 P.2d 482 (1963), we said:

> Respondent correctly asserts the rule that the matter of reasonableness or fairness of fees is a problem for the civil courts and ought not to be the basis for a disciplinary proceeding.

In that case, we said, at page 748:

> That the simple question of whether or not an attorney's fee is reasonable or unreasonable, fair or immoderate, is cognizable in a civil court only is a sensible rule. Any rule to the contrary would place the practicing attorney at the mercy of a scheming, malicious, or unreasonable client and could throw him into an arena where his very reputation and career were at stake purely out of whim, malice, or irrational motive.

(Footnote omitted.) We recognized, however, that where the fee retained or demanded was unconscionable, it is a matter properly cognizable in a disciplinary proceeding.

In *In re Smith*, 42 Wn.2d 188, 192, 254 P.2d 464 (1953), an attorney had entered into a contingent fee contract in a divorce case. We held the contract invalid and said that the attorney must rest his right to attorney fees upon the doctrine of quantum meruit. We said:

> The gist of respondent's claim is thus the reasonableness of the fee charged. The place to determine any controversy between attorney and client as to the reasonableness of fees claimed under *quantum meruit* is in a civil action at law. Such an action is here pending. Under such circumstances, the use of disciplinary proceedings to determine whether or not a fee charged or collected is reasonable is wholly inappropriate. See *Herrscher v. State Bar of California*, 4 Cal. (2d) 399, 49 P. (2d) 832 [1935].
>
> We are therefore of the view that, when the trial committee and the board found that the fee here retained was not unconscionable, the disciplinary proceeding, in so far as it relates to the amount of fee, should thereupon have been terminated. The determination that the fee retained was "excessive" therefore cannot serve as a basis for the recommended reprimand.

*See also In re Wiltsie*, 109 Wash. 261, 186 P. 848 (1920).

While these cases do not expressly speak to the subject, implicit in all of them is a recognition that the terms of a contract between attorney and client with regard to fees are not properly to be determined in a disciplinary proceeding. Certainly if the right to recover in quantum meruit (implied contract) is a matter for the courts to decide in a civil proceeding, the question whether an express contract was made and, if so, what its terms were, can be decided with justice to both parties only in a court of law.

This conclusion is in harmony with the general rule that the fact that an attorney may owe his client a balance on an account growing out of the relation between them will not be entertained as a subject of a proceeding to disbar when it appears that such balance is a subject of a bona

fide dispute. *See* Annot., *Disbarment for failure to account for money of client*, 43 A.L.R. 54, 69-70 (1926). 7 C.J.S. *Attorney & Client* § 23(3)(a) (1937), particularly 7 C.J.S. *Attorney & Client* § 23 n.46 (Supp. 1973).

■ We recognized in *In re Gowan*, 104 Wash. 166, 176 P. 7 (1918), that a necessary element of a charge of misappropriation of a client's money is the intent to defraud. If an attorney withholds funds under an honest claim of right to them, the offense is not committed. We have also recognized that an attorney need not account for funds which represent the sum due him for attorney fees. *See In re Hall*, 73 Wn.2d 401, 438 P.2d 874 (1968).

A civil action is pending in which the very question decided by the hearing panel is at issue. It may develop that the hearing on this matter will result in a determination favorable to the position taken by the client. On the other hand, it may result in a judicial determination that the acts of the respondent with respect to the funds which came into his possession were in accord with the agreement of the parties; or that while there was no agreement as to attorney fees, the amount retained was earned by the respondent upon the theory of quantum meruit.

If the federal court should decide that the respondent and his client had an agreement that the client should not be charged more than $1,000 (in spite of the fact that the client denies that there was any agreement at all), it would then be proper to consider whether the respondent should be disciplined for withholding funds which he should have paid to the client. But until such a determination is made, this court cannot say that the respondent was guilty of misconduct in failing to pay over all or a portion of the funds which he received.

The panel did not make a finding as to whether the respondent reported to the client the receipt of the check and its allocation to attorney fees and investigator expenses. The respondent declares that, according to his usual office procedure, such an acknowledgement of the receipt of the funds would have been sent at the beginning of the

month following the receipt of the check. However, it appears that it was not the office custom to keep carbon copies of such statements or receipts and, therefore, the respondent had no documentary evidence that he had sent such a communication.

█ The client denied that he had received any notice that the respondent had received the check. This leaves the matter in doubt and we are reluctant to discipline an attorney for an omission of which he may not be guilty. Upon the present state of the record, we can justly do no more than admonish the respondent that the reporting of receipt of a client's funds and the disposition made of them is a serious duty of the lawyer under the Canons and under the Code of Professional Responsibility. The attorney should make certain that this is done and not rely entirely upon "office routine." *See In re Schroeter*, 80 Wn.2d 1, 489 P.2d 917 (1971).

We conclude that upon this item of complaint, no disciplinary action is indicated at this time.

Upon the final complaint to be considered, we are of the opinion that the 30-day suspension recommended by the board is a punishment more severe than the circumstances would justify.

This item was a complaint of a guardian of an incompetent who had engaged the services of the respondent. The respondent had managed the small estate of the incompetent for approximately 8 years, until her death in 1971. Most of this time she had spent in a nursing home, and when her estate was depleted the respondent secured public assistance for her to supplement her income.

The guardian and her husband had lived with the ward for 3 months, receiving $150 per month for their services. Then the incompetent became ill and was moved to a nursing home. Until the estate became depleted, the guardian was paid $10 a month to visit the ward and take her small items for her personal use, and $50 a year for other services to the ward, which consisted in the main of check signing.

After a time the respondent was advised by the nursing home employees that the guardian was not visiting the ward and was not spending any money for gifts for her. In the meantime, 2 years had elapsed since the last accounting had been made in court. The respondent advised the guardian that he would not ask the court to approve the $10 a month allowance, because the ward's estate could not afford it. She became very unhappy over this and asked the respondent's former partner to take over the guardianship. The partner was not willing to do so, apparently, but he did write to the respondent suggesting that he accede to the guardian's requests for money. The respondent prepared an accounting in rough draft, but the guardian was unwilling to sign an accounting unless it provided for future payments to her. At one point the respondent was asked to find another guardian and he attempted to do so. At another time the guardian asked him to withdraw. The respondent did not respond to this request.

On June 6, 1971, the ward died. The estate was by that time insolvent.

The panel recognized that the guardian was a difficult client, but it was of the opinion that the respondent was obliged to withdraw immediately when she asked him to do so, and that his refusal or failure to do so violated CPE 44, which provides:

> The right of an attorney or counsel to withdraw from employment, once assumed, arises only from good cause. Even the desire or consent of the client is not always sufficient. The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect.

The respondent maintains and we agree that under the circumstances he would not have been justified in withdrawing as counsel until such time as the guardian had secured the agreement of some other attorney to take over the handling of the guardianship. As the respondent suggests, the attorney owes a duty to the ward, as well as to the guardian. Since the guardian in this case manifested a

greater interest in obtaining money for herself than in serving the interest of the ward, it would have been hazardous to the interest of the ward to turn the assets of her small estate over to the guardian.

In *In re Michelson*, 8 Wn.2d 327, 335, 111 P.2d 1011 (1941), we said:

> It must be borne in mind that the real object and purpose of a guardianship is to preserve and conserve the ward's property for his own use, as distinguished from the benefit of others.

We think that under the circumstances of this case, the respondent cannot be faulted for refusing to abandon the ward at the guardian's request. Had she asked him to turn the files over to another attorney and had the attorney manifested a willingness to accept the responsibility, a different question would be presented.

We do agree with the board's findings that the respondent should be disciplined for neglecting to file accountings as required by statute. The excuse that the guardian was unwilling to sign an accounting unless it provided for the payments to which she thought she was entitled, is insufficient. The respondent should have presented his accounting to the court and explained the situation, allowing the court to decide what action should be taken with regard to allowances for the guardian. The procrastination found in this instance is similar to that which appeared in other complaints and is contrary to the spirit of CPE 21. However, we do not find the substance of this complaint serious enough to warrant a 30-day suspension and think that censure is a more appropriate discipline.

We have been assured that the respondent has taken affirmative steps to correct the conditions which have been partly responsible for these incidents of neglect and delay. He has improved his office procedures and now has the assistance of other attorneys practicing with him. We trust that censure upon five complaints will be sufficient to impress upon him the importance of attending to the affairs of all of his clients with diligence and promptness. Any fur-

898

ther action upon the sixth complaint must await the outcome of the civil action brought by the client.

The recommendation of the hearing panel, as approved by the Board of Governors, calling for censure of the respondent is approved.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, and BRACHTENBACH, JJ., concur.

STAFFORD, J. (concurring in part and dissenting in part) —I cannot assume the majority's hopeful belief that mere censure will reform respondent. On an earlier occasion he was reprimanded for similar conduct. Although reprimand is a stronger disciplinary action than censure its imposition had little apparent effect.

With the foregoing background in mind, I am compelled to agree with the Disciplinary Board and would follow its recommendations. Respondent should be censured for the four minor charges, but he should also be suspended from the practice of law for a period of 30 days on each of the two more serious charges. I also agree that the latter two penalties should run concurrently.

WRIGHT and UTTER, JJ., concur with STAFFORD, J.