197 P.3d 1177 (2008)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Bradley G. BEHRMAN, an Attorney at Law.
No. 200,536-5.
Supreme Court of Washington, En Banc.
Argued October 30, 2008.
Decided December 24, 2008.
*1178 Sachia Stonefeld Powell, Washington State Bar Association, Seattle, WA, for Respondent.
Bradley Galvin Behrman, Seattle, for Appellant.
OWENS, J.
¶ 1 Bradley G. Behrman appeals the Washington State Bar Association (WSBA) Disciplinary Board's (Board) recommendation that he be suspended for nine months, pay $500 in restitution, and undergo counseling. The *1179 hearing officer determined that Behrman committed five RPC violations when he failed to (1) communicate with his client Malka Bloom, (2) provide her with a billing statement, (3) pursue her debt collection claim, (4) notify her before withdrawing funds from a trust account, and (5) cooperate with the WSBA's investigation. Behrman contends that a number of the findings were in error and that he caused no actual or potential injury, and therefore, he should receive a lesser sanction. We disagree. We impose a nine-month suspension, with reinstatement conditioned on Behrman undergoing professional office practice or management counseling, and order $500 in restitution.

FACTS
¶ 2 Behrman represented Bloom in business dealings related to a failed business, Ghetto Technologies, LLC (Ghetto Tech), beginning in summer 2000. One of the legal matters Behrman handled was the assignment of Ghetto Tech's lease to a new tenant, Party Planet LLC. Behrman completed most of the work associated with Ghetto Tech by November 2002.
¶ 3 In November 2002, funds from the lease assignment were disbursed, leading to a billing dispute. Behrman asked for $2,500 to be retained from the disbursement for payment of his fees. The parties dispute whether Behrman stated that his actual fees were higher or that $2,500 was the final payment. Bloom told Behrman that she did not want to release the $2,500 to him without a complete billing statement. They agreed to put the $2,500 in a trust account and release the remaining funds. Shortly thereafter, Behrman withdrew $500 from the trust account without notifying Bloom or obtaining her approval. When questioned about this withdrawal, Behrman testified that "`if she wasn't going to have  enable me to take money out of funds that were her share in the Bates trust account, then I was going to take this.'" Clerk's Papers (CP) at 150 (quoting Dep. of Behrman at 48 (June 1, 2005)).
¶ 4 After the disbursement, Behrman's only remaining task was to recover a debt from Party Planet, Bloom's share of which was $2,922.31. After August 17, 2001, Behrman took no action to recover this debt, although he repeatedly promised to do so, and was informed several times that Party Planet appeared to be on the brink of bankruptcy. Party Planet eventually declared bankruptcy, making it unlikely the debt will ever be paid. Behrman acknowledges that if he had moved punctually, the debt would have almost certainly been collected. In February 2005, Bloom was able to exchange her interest in the Party Planet debt for a release from personal liability on the Ghetto Tech lease.
¶ 5 After November 2002, Behrman failed to respond to numerous calls and e-mails from Bloom regarding his final billing statement and her legal claim against Party Planet. The few times Behrman did respond to Bloom's e-mails or letters, he promised to provide the documents soon but did not follow through. On July 22, 2004, Bloom terminated Behrman's representation and requested her files to be sent to her home address. Behrman never sent Bloom her entire file and did not submit a final billing statement until the day before his disciplinary hearing.
¶ 6 Behrman failed to fully comply with the WSBA's investigation. Twice he failed to bring some of the documents listed in the disciplinary counsel's subpoena duces tecum, and he repeatedly failed to follow through on promises to produce those documents by a later date. He finally produced some additional files and a complete billing statement shortly before his disciplinary hearing, but he never produced the entire client file. The hearing officer allowed the billing statement into evidence to show that Behrman had finally completed it but not to determine Bloom's potential injury. II Hearing Transcript (Nov. 7, 2006) at 169-72.
¶ 7 The hearing officer made no findings of fact regarding Behrman's personal life, other than noting the fact that Behrman's father had passed away and determining that Behrman had not proved personal or emotional problems.

PROCEDURAL HISTORY
¶ 8 The hearing officer determined that Behrman had committed five RPC violations, *1180 to wit: On the first count, Behrman violated RPC 1.3 and RPC 3.2 by failing to collect the Party Planet debt and failing to conclude his representation of Bloom; on the second count, Behrman violated RPC 1.4 and RPC 1.5(b) by failing to provide Bloom with sufficient information about the work he performed and the amount he billed and by failing to resolve their fee dispute; on the third count, Behrman violated RPC 1.4 by failing to return her calls or e-mails and by failing to provide her client file as requested; on the fourth count, Behrman violated RPC 1.15A by removing Bloom's disputed funds from the trust without her knowledge or consent and failing to render appropriate accounts to her; on the fifth count, Behrman violated RPC 8.4(l) and ELC 5.3(f) by failing to provide prompt and complete responses to the disciplinary counsel's requests for information.
¶ 9 The hearing officer then determined the presumptive sanction for each violation using the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992). Under ABA Standards standard 4.42, the presumptive sanction for counts one, two, and three was suspension because Behrman engaged in a pattern of neglect and caused injury or potential injury to the client. Under ABA Standards standard 4.12, the presumptive sanction for count four was suspension because Behrman knew, or should have known, that he was dealing improperly with client funds and caused potential injury to the client. Under ABA Standards standard 7.3, the presumptive sanction for count five was reprimand because Behrman's conduct toward the disciplinary counsel was not intentional.
¶ 10 The hearing officer found six aggravating factors: prior disciplinary offense, pattern of misconduct, failure to comply with the WSBA's investigation and orders, refusal to acknowledge the wrongful nature of his conduct, substantial experience in the practice of law, and indifference to restitution. The hearing officer found only one mitigating factor: absence of a dishonest or selfish motive. The Board amended the hearing officer's decision by striking the aggravating factors of pattern of misconduct and failure to comply with the WSBA's investigation because the violations involved only one client and no bad faith.
¶ 11 Based on the presumptive sanctions, and taking into account the aggravating and mitigating factors, the hearing officer recommended a nine-month suspension, $4,383.25 in restitution, and evaluation and counseling for his personal and professional problems. The Board amended the restitution amount to $500 but otherwise unanimously affirmed the hearing officer's recommendation.

ANALYSIS
¶ 12 This court has ultimate authority over lawyer discipline in Washington. In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 329, 157 P.3d 859 (2007). This court gives considerable weight to the hearing officer's findings of fact and reviews them for substantial evidence. Id. at 329-30, 157 P.3d 859. In particular, we "give great weight to the hearing officer's evaluation of the credibility and veracity of witnesses." Id. at 330, 157 P.3d 859. Conclusions of law are reviewed de novo and upheld if supported by the findings of fact. Id. This court will uphold a sanction recommended by a unanimous Board "in the absence of a clear reason for departure." In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 717, 72 P.3d 173 (2003).

A. Unsupported Arguments
¶ 13 Assignments of error must be accompanied by argument with supporting legal authority and references to the record. RAP 10.3(a)(6), applicable through ELC 12.6(f). In addition, this court may decline to consider issues presented without supporting argument. In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 466-67, 120 P.3d 550 (2005). Many of Behrman's assignments of error do not have supporting argument or are unaccompanied by citations to the record or to legal authority. This court declines to address these issues.

B. Relevancy of Behrman's Bill
¶ 14 Behrman challenges the exclusion of the contents of his billing statement, *1181 submitted the day before his disciplinary hearing. A "disciplinary proceeding is not the proper forum in which to resolve disputes as to the right to charge or retain attorney fees." In re Disciplinary Proceeding Against Fraser, 83 Wash.2d 884, 892, 523 P.2d 921 (1974).[1] Whatever fee Behrman may or may not have earned is simply irrelevant to a disciplinary proceeding regarding his failure to diligently pursue his client's claim, communicate with the client, give her an itemized bill, notify her before withdrawing fees from the trust account, and comply with the disciplinary process. As detailed below in the sanctions analysis, Bloom's noneconomic injuries and potential economic injuries were the same, regardless of how much Behrman had failed to timely bill in fees. The hearing officer correctly held that his final bill was untimely submitted and irrelevant.

C. Findings of Fact
¶ 15 Behrman challenges all of the nonstipulated findings of fact, but he provides support and citations only for his challenge to the finding that he was not remorseful. This finding is uniquely based in his credibility as a witness. Giving great weight to the hearing officer's determination of witness credibility and noting Behrman's repeated statements minimizing the consequences of his actions, we find that this finding of fact is supported by substantial evidence.

D. Mitigating and Aggravating Factors
¶ 16 Behrman also challenges many of the aggravating factors and the hearing officer's determination that certain mitigating factors did not apply. As detailed below, each of the hearing officer's findings was supported by substantial evidence.

1. Remorse and Acknowledging Wrongful Nature of Conduct
¶ 17 Behrman challenges the hearing officer's finding that he refused to acknowledge the wrongful nature of his conduct and the hearing officer's failure to find the mitigating factor of remorse. These factors are primarily based on Behrman's credibility as a witness, and this court must give great weight to the hearing officer's finding. Behrman has repeatedly minimized the seriousness and consequences of his behavior and attempted to justify it based on his perception that Bloom owes him money. See, e.g., CP at 124-25. Substantial evidence supports the hearing officer's findings regarding these factors.

2. Indifference to Restitution
¶ 18 Behrman challenges the finding that he was indifferent to restitution, but this argument is without merit because (1) he has still failed to provide Bloom with her client file, (2) he never returned the $500 to the trust account, and (3) he did not provide a billing statement until four years after it was requested, and then only in response to a disciplinary proceeding.

3. Personal and Emotional Problems
¶ 19 Behrman alleges that the hearing officer erred in not finding the mitigating factor of personal and emotional problems, particularly in light of the hearing officer's recommendation that Behrman be required to undergo evaluation and counseling for his personal and professional problems. Opening Br. of Appellant at 58. Behrman also contends that the hearing officer erred in requiring Behrman to prove this mitigating factor by a clear preponderance of the evidence rather than a simple preponderance of the evidence although he fails to cite any legal authority. Id. Finally, Behrman alleges the hearing officer erred by requiring expert testimony to prove depression. Id. at 58-59.
¶ 20 First, this court has required "professional office practice or management counseling" even when no mitigating factor of personal and emotional problems was found. In re Disciplinary Proceeding Against DeRuiz, 152 Wash.2d 558, 582-83, 99 P.3d 881 (2004). *1182 Such an approach is particularly appropriate in a case like Behrman's where he has been unable to provide credible evidence of depression but appears unable to manage his practice.
¶ 21 Second, the hearing officer found Behrman's evidence of depression the testimony of Behrman and two friends, along with a bill from Behrman's acupuncturist, allegedly for treatment of depression to be not credible. CP at 164. Therefore, Behrman failed to show his personal or emotional problems by either a clear or a simple preponderance of the evidence.
¶ 22 Third, Behrman argues that the hearing officer erred by requiring expert testimony of his depression and discounting the evidence of acupuncture treatment for his depression. However, the hearing officer simply stated that Behrman had not presented expert "or other credible" evidence, indicating that the evidence Behrman had presented was not credible. Id. Given that Behrman presented no credible evidence of his depression, the hearing officer's rejection of depression as a mitigating factor was supported by the record.

E. Presumptive Sanctions
¶ 23 Behrman contends that none of his RPC violations caused actual or potential injury, and therefore the presumptive sanctions for all five counts were incorrect.[2] His argument fails because it ignores the fact that Bloom was subject to potential economic injury even if she had not suffered actual economic injury. In addition, his argument fails to acknowledge Bloom's frustration and anxiety and the injury to the profession.
¶ 24 First, Behrman's failure to pursue Bloom's claim against Party Planet resulted in both actual injury (she was deprived of those funds between 2001 and 2004) and potential injury (her debt collection claim could have become worthless when the debtor went bankrupt several years after Behrman was supposed to collect the debt). Second, Behrman caused actual or potential injury when he failed to communicate with Bloom for four years about her claim, her file, and his billing statement. See In re Disciplinary Proceeding Against Burtch, 112 Wash.2d 19, 27, 770 P.2d 174 (1989) (holding that client agitation and damage to the profession caused by lawyer's neglect were sufficient injury to justify suspension). Third, Behrman caused potential injury when he withdrew $500 from the trust account because if his billwhich was not submitted until four years lateris found to be invalid or uncollectible and he cannot repay her, she will be deprived of the $500.
¶ 25 Finally, Behrman caused potential injury to the legal system when he repeatedly failed to provide prompt and complete responses to the disciplinary counsel's requests for information. See In re Disciplinary Proceeding Against Clark, 99 Wash.2d 702, 707-08, 663 P.2d 1339 (1983) (suspending a lawyer for failing to cooperate with the WSBA's investigation, even after the underlying complaint was dismissed, because "[i]f the members of [the legal] profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes."). The hearing officer did not err in finding that each of Behrman's five RPC violations caused actual or potential injury.

F. Recommended Sanctions
¶ 26 Behrman argues that the nine-month suspension is disproportionate when compared to similar cases and that the $500 restitution order is inappropriate because he does not owe any money to Bloom. Opening Br. of Appellant at 46, 61. To determine the proper sanction for an ethical violation using the ABA Standards, the hearing officer calculates the presumptive sanction and then considers any aggravating or mitigating factors. In re Disciplinary Proceeding Against Trejo, 163 Wash.2d 701, 721, 185 P.3d 1160 (2008). If suspension is the presumptive sanction, the appropriate range is generally six months to three years, with the minimum sanction being appropriate only *1183 when the mitigating factors outweigh the aggravating factors. Id. at 722, 185 P.3d 1160. Here, the hearing officer found that the presumptive sanction for counts one through four was suspension, and for count five, reprimand. Taking into account the six aggravating factors and single mitigating factor, the hearing officer recommended a nine-month suspension and $4,383.25 in restitution. The Board struck two of the aggravating factors and reduced the restitution to $500 but unanimously upheld the recommendation of a nine-month suspension.
¶ 27 When reviewing the sanctions recommended by the Board, this court considers "`(1) proportionality of the sanction to the misconduct and (2) the extent of agreement among the members of the Disciplinary Board.'" Trejo, 163 Wash.2d at 734, 185 P.3d 1160 (quoting In re Disciplinary Proceeding Against Schwimmer, 153 Wash.2d 752, 764, 108 P.3d 761 (2005)). This court will adopt the Board's recommendation "`unless we are able to articulate specific reasons for adopting a different sanction.'" Id. (quoting In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 95, 667 P.2d 608 (1983)).

1. Proportionality of Suspension
¶ 28 Behrman argues that his nine-month suspension is disproportionate when compared to several other cases, but each is distinguishable. First, Behrman had more aggravating factors than mitigating factors. Cf. In re Funk, Bar No. 14349 (WSBA Disciplinary Bd. Order Sept. 16, 1994) (imposing a six-month suspension for three counts of removing funds from trust account when the Board found two aggravating factors and six mitigating factors). Second, Behrman has failed to demonstrate a specific factor that would justify leniency. Cf. Burtch, 112 Wash.2d at 28-29, 770 P.2d 174 (granting leniency based on the "decisive mitigating factor" of personal and emotional problems and reducing a 90-day suspension to 45 days). Third, Behrman's presumptive sanction was suspension because he engaged in a pattern of neglect. Cf. In re Salazar, Pub. No. 02# 00022 (WSBA Disciplinary Bd. Order Aug. 24, 2004) (finding a presumptive sanction of reprimand because there was only one instance of neglect). Finally, the hearing officer and the Board unanimously recommended a nine-month suspension for Behrman. Cf. In re Disciplinary Proceeding Against Blanchard, 158 Wash.2d 317, 320-21, 328, 144 P.3d 286 (2006) (suspending a lawyer for six months when the hearing officer recommended a 30-day suspension and a divided Board recommended one year). Consequently, Behrman has not met his burden of showing that his nine-month suspension is disproportional.

2. Restitution
¶ 29 The Board unanimously recommended that Behrman be required to pay Bloom $500 in restitution for his unauthorized withdrawal of $500 from the trust account. Behrman argues that he should not be required to pay restitution because Bloom allegedly owes him more than $500 in fees. Opening Br. of Appellant at 46. However, the validity of his outstanding bill has not been established, and Bloom should not be subject to the risk of loss during the ongoing fee dispute. The restitution order is proper.

CONCLUSION
¶ 30 We hold that the hearing officer and the Board properly found that Behrman committed five RPC violations. We impose a nine-month suspension, with reinstatement conditioned on Behrman obtaining professional office practice or management counseling, and order $500 in restitution to Bloom.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, BARBARA A. MADSEN, RICHARD B. SANDERS, TOM CHAMBERS, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, JJ.
NOTES
[1] Fraser was overturned by In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 985 P.2d 328 (1999), only to the extent that Fraser limited disciplinary proceedings to "`unconscionable'" fees and the superseding former RPC 1.5 (1990) expanded disciplinary proceedings to include any fee that is "`unreasonable.'" Boelter, 139 Wash.2d at 96-97, 985 P.2d 328.
[2] Behrman also alleges that he did not engage in a pattern of neglect, but the record is replete with evidence of Behrman's habitual neglect in failing to pursue Bloom's claim, failing to communicate with Bloom, and failing to provide her with her client file or a final billing statement.