[No. 3824.   En Banc.   May 12, 1988.]

*In the Matter of the Disciplinary Proceeding
Against* LESLIE M. YATES, *an
Attorney at Law.*

*Maria S. Regimbal,* for Bar Association.

*Leslie M. Yates,* pro se.

DOLLIVER, J.—This disciplinary matter comes to the court upon the appeal of attorney Leslie M. Yates, who was admitted to practice in Washington in 1951. Yates appeals the Disciplinary Board's (Board) decision recommending a 2–year suspension for mishandling a client's property in a guardianship proceeding. The Board's recommendation of a 2–year suspension was based in part on Yates' extensive prior disciplinary record. The hearing panel officer found Yates unfit to practice law and recommended Yates be disbarred. We concur in the recommendation of the hearing panel officer and find disbarment to be the appropriate penalty.

In 1984, Diane Dupuis, then 43 years old, suffered a debilitating stroke which left her paralyzed and unable to communicate. Since that time, Dupuis has been confined to medical facilities. Dupuis' friend and former employer, June Marmsoler, requested Yates to file a petition for guardianship on her behalf for the benefit of Dupuis.

Marmsoler, who is an escrow officer, had known Yates for years and had referred potential clients to him for legal work in the past. On June 11, 1984, Marmsoler was appointed guardian by order of the King County Superior Court. Yates was paid $750 for his professional services in the guardianship.

In July 1984, Yates obtained an order for the guardian to recover the ward's property from storage and to sell it for the benefit of the estate. In late September, Yates met Marmsoler and a friend at a north Seattle storage facility to recover Dupuis' property. Marmsoler took some personal property of the ward which she believed the ward would want should she ever recover from her stroke. Yates agreed

to remove the balance of the furniture and to have it sold at a garage sale. Marmsoler understood Yates' daughters would inventory the property. She also understood that any minor items which did not sell and were of little value could be given to the Salvation Army.

Yates filled the ward's van and delivered what was mostly furniture and household goods in cartons to the home of two of his neighbors who were in the process of having a garage sale. Yates did not in any way inventory the goods before he left them at the sale. Sometime after a week, Yates picked up the goods which had not been sold and stored them at his home office. Yates made one more trip to the storage facility and emptied it of all Dupuis' possessions. The goods from that trip remained in the van in front of Yates' home.

The Department of Social and Health Services had advised Marmsoler the assets had to be liquidated. Between the fall of 1984 and the spring of 1985, Marmsoler tried to get a response from Yates regarding the property on at least three occasions. Marmsoler planned to use any funds recovered from the sale of property to cover Dupuis' personal expenses which were not covered by state Medicaid benefits.

In May 1985, Marmsoler's daughter went to Yates' home office to retrieve the ward's van. The daughter returned to take pictures of Yates' yard where the ward's property was sitting outside uncovered. The next week Marmsoler removed the property which was wet and bug infested. Marmsoler saw Yates the day she removed the property, but did not ask him for an explanation and he offered none. Marmsoler removed the property to her home and tried to clean and dry out the property. She inventoried it and ultimately sold the property which was in the van and in Yates' yard for $282.

On June 28, 1985, an attorney, at Marmsoler's request, wrote Mr. Yates regarding the Dupuis property. The attorney asked for an accounting and an explanation as to why the property was allowed to sit out in the weather. On

August 16, 1985, Yates wrote the attorney and stated he did not believe the property which had not sold at the garage sale had much value, which is why he stored it outside. He also stated he had not received funds from the sale but expected to receive them soon. On August 20, 1985, Yates forwarded, without explanation, a cashier's check in the amount of $225 directly to Marmsoler.

### PRIOR DISCIPLINARY RECORD

1. In 1958, Yates promised to take action on a promissory note and mortgage which he failed to do for 6 years, even after repeated requests by his client as to the status of the lawsuit. In 1966, the Board of Governors issued a reprimand for this neglect of a collection matter.

2. In 1967, Yates was formally censured on 2 counts. Count 1 was based on Yates' neglect in a bankruptcy case, which caused the client to lose his job when a default judgment was entered against his employer based on a writ of garnishment.

In the second case which is the basis of count 2, Yates told his client, who was trying to recover from Blue Cross money expended for hospital expenses, that a complaint had been filed when it had never been filed.

Both of these counts also charged Yates with lack of cooperation with the bar investigation of these cases.

3. In 1970, in *In re Yates*, 78 Wn.2d 243, 473 P.2d 402 (1970), Yates received a 45–day suspension for inexcusable neglect which resulted in inordinate delay in probating an estate. Not until the date of the actual disciplinary hearing did he present the final papers necessary to resolve a relatively minor problem which had prevented the conclusion of the probate for 2 years.

4. In 1978, Yates was charged with four counts of misconduct by the bar. The first count concerned Yates taking a retainer to commence a foreclosure on a piece of real property. He never commenced the action, despite numerous inquiries by his client, nor did he offer to return the money advanced by the client.

The second count concerned his lack of action on a personal injury claim for over 10 years, while leading his client to believe he had filed a claim.

The third count was Yates' lack of cooperation with the Disciplinary Board which had to subpoena him in order to get any information for its investigation.

The fourth count in 1978 charged that the first three counts, in light of his extensive prior record of discipline, demonstrated unfitness to practice law. Yates was censured with respect to counts 1 and 3, reprimanded with respect to count 2, and was suspended for 1 year with respect to count 4. *In re Yates*, 90 Wn.2d 767, 585 P.2d 1164 (1978).

5. In addition to the prior discipline, the records of the bar association reflect two stipulations. In 1980, Yates entered into a stipulated statement of facts, which indicated he had acted as an attorney during his period of suspension. Then, in 1983, Yates stipulated to misconduct without discipline for his failure to file a timely 1982 trust account affidavit.

## RECOMMENDATIONS OF HEARING PANEL OFFICER AND DISCIPLINARY BOARD

In March 1987, the hearing panel officer found Yates' conduct violated CPR DR 9–102(B)(2) (now RPC 1.14-(b)(2)), which requires attorneys to place their client's property in a place of safekeeping; and CPR DR 9–102-(B)(3) (now RPC 1.14(b)(3)), requiring an attorney to maintain records of the client's property.

The hearing panel officer also found Yates violated CPR DR 9–102(B)(3), requiring attorneys promptly to provide an accounting to their clients, when he took 6 weeks to provide the accounting requested by Marmsoler through her attorney.

Finally, the hearing panel officer found the above counts, combined with the prior discipline and stipulations, demonstrated Yates' unfitness to practice law and recommended, pursuant to RLD 1.1(p), that he be disbarred. In June 1987, the opinion of the Board stated Yates had failed

to maintain proper records and properly to provide an adequate accounting to his client. The Board also found Yates' prior disciplinary record, reflecting repeated instances of the same types of problems, could not be ignored. The Board recommended a 2–year suspension stating it would be a sufficient deterrent to prevent any future acts of misconduct.

Two Board members dissented filing an opinion stating Yates should be disciplined primarily because he failed to respond in a timely fashion to his client's inquiries, but that a 2–year suspension was too severe and would be tantamount to disbarment. They recommended a 6–month to 1–year suspension.

In his appeal, Yates lists four assignments of error to the Board's recommendation: (1) The Board erred in finding he failed to keep safe his client's property and to prepare an inventory of that property. (2) It erred in finding he failed to account promptly for his client's property. (3) It erred in that the sanction of a 2–year suspension is too severe. (4) It erred in applying the Code of Professional Responsibility to conduct which did not involve the practice of law.

Yates' first assignment of error concerns an issue not addressed by the Board. The Board did not find Yates failed to keep his client's property safe. Such a lack of finding may have been inadvertent on the Board's part (it was not addressed in any way); the hearing panel officer did find a lack of safekeeping of the client's property, and there is substantial evidence in the transcript and pictures in the exhibits to support the hearing panel officer's conclusion.

The Board did rule Yates was wrong not to inventory the property. Yates claims he did not need to inventory since all unsold items were to be given to charity or were never unpacked from the ward's van. This contradicts the understanding of his client as determined by the hearing panel officer. The court has long recognized the credibility of witnesses is best determined by the fact finder. *In re Kuvara*, 97 Wn.2d 743, 747, 649 P.2d 834 (1982). The hearing panel officer found the client intended only small household items

were to be given away if not sold, never the large pieces of furniture which Yates allowed to decay in his yard.

Yates, in his second assignment of error, argues he responded adequately to his client's request for an accounting. In fact, Yates was never able to account for some of the ward's furniture. Even with his final disbursement to Marmsoler, he gave no explanation as to what the items were which produced the funds for the disbursement. Finally, the client had to engage another attorney in order to get an accounting; that response, which was inadequate, was not given until 6 weeks later. The duty to account and deliver client funds requires that it be carried out promptly. *See In re Deschane,* 84 Wn.2d 514, 516, 527 P.2d 683 (1974).

Yates' fourth assignment of error is that his conduct did not violate the disciplinary rules, as it was not in the scope of legal practice. It is apparent from the record the reason Marmsoler entrusted the property to Yates was that he had served as her attorney in filing the petition for guardianship.

As pointed out by the bar association counsel, if Yates had wanted to relieve himself of the obligations imposed by the Code of Professional Responsibility, he could have obtained a clear and knowledgeable waiver from his client—that he would make some effort to sell the property, but that he would not inventory it or care for it.

The fact that Yates did not receive any extra compensation for his handling of the estate's property is perhaps informative of Yates' good intentions initially, but those intentions, while they might be a factor mitigating what sanction is imposed, do not excuse his later neglect, nor remove him from his obligations as an attorney to keep safe his client's property.

The critical issue in this case is found in Yates' third assignment of error regarding the appropriate sanction for these violations in light of his previous history.

Yates' disciplinary record spans over 20 years and includes three letters of censure, two reprimands, and two

separate suspensions of 45 days and 1 year respectively, not including the current offense. All of Yates' cases over this time involve the same basic deficiency: neglect of legal matters entrusted to him.

The *ABA Standards for Imposing Lawyer Sanctions* (1986) provide a helpful framework for deciding an appropriate sanction and have been used by this court in several recent cases. *See In re Allotta,* 109 Wn.2d 787, 795, 748 P.2d 628 (1988); *In re Witteman,* 108 Wn.2d 281, 288, 737 P.2d 1268 (1987); *In re Rentel,* 107 Wn.2d 276, 282, 729 P.2d 615 (1986).

■ The purpose of lawyer discipline as stated by the American Bar Association (ABA) sanctions committee is as follows:

> The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.

*Standards,* at 7. These purposes have consistently been stated by this court. *In re Zderic,* 92 Wn.2d 777, 787, 600 P.2d 1297 (1979). In determining how best to fulfill these purposes, the committee propounds four questions for a court imposing sanctions to answer:

(1) What ethical duty did the lawyer violate? . . .
(2) What was the lawyer's mental state? . . .
(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? . . . and
(4) Are there any aggravating or mitigating circumstances?

*Standards,* at 5.

1. The ethical duties which Yates violated were the duty to preserve his client's property and the duty to account promptly to his client for the disposition of the client's property.

2. Yates' mental state was that he had knowledge of his conduct even if he did not have as a purpose the inadequate handling of his client's property. Yates knew he

placed property outside where it could be damaged; he knew he never inventoried the property; he knew he took 6 weeks to respond to the attorney's request for an accounting. Yates knew of his inadequate care but rationalized his approach by believing there was not much value to his client's property.

3. The actual injury caused by Yates' behavior is the decreased value of the client's property. Yates was in possession of virtually all of his client's worldly goods. While it is true these goods did not have a large value even before their deterioration, the money raised by their sale was to be used to purchase personal care items not covered by health insurance and, as such, had great value to the client.

4. Aggravating factors set out by the ABA are as follows:

    (a) prior disciplinary offenses;
    (b) dishonest or selfish motive;
    (c) a pattern of misconduct;
    (d) multiple offenses;
    (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
    (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
    (g) refusal to acknowledge wrongful nature of conduct;
    (h) vulnerability of victim;
    (i) substantial experience in the practice of law;
    (j) indifference to making restitution.

*Standards,* at 15. Yates is guilty of a, c, g, h, i, and j, 6 out of the 10 aggravating factors.

Mitigating factors set out by the ABA are as follows:

    (a) absence of a prior disciplinary record;
    (b) absence of a dishonest or selfish motive;
    (c) personal or emotional problems;
    (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
    (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
    (f) inexperience in the practice of law;
    (g) character or reputation;
    (h) physical or mental disability or impairment;

(i) delay in disciplinary proceedings;
(j) interim rehabilitation;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.

*Standards,* at 15. Yates has an absence of a dishonest motive, 1 out of 13 possible mitigating factors. In his appearance before this court, Yates stated the matter of any mental or emotional instability had been raised at the instance of bar counsel. He denied to bar counsel and also to the court any problems in this regard.

█ It should also be noted the *ABA Standards* state disbarment is appropriate when the attorney has been suspended for the same or similar conduct, and knowingly engages in further acts of misconduct. *See Standards,* at 47. In this case, Yates has been disciplined seven times previously for similar client neglect, including two suspensions. We have also disbarred for repeated behavior which indicates the attorney did not learn from previous disciplinary action. *In re Allper,* 94 Wn.2d 456, 617 P.2d 982 (1980); *In re Vetter,* 104 Wn.2d 779, 711 P.2d 284 (1985); *In re Selden,* 107 Wn.2d 246, 728 P.2d 1036 (1986).

Taken singly, none of the actions for which Yates has been disciplined might justify disbarment. Taken together, and considering both their frequency and their underlying similarity (neglect of clients' business) and our responsibility to protect the public, we believe the appropriate measure of discipline to be disbarment.

Upon the filing of this opinion, it is ordered Leslie M. Yates be disbarred from the practice of law and his name be stricken from the roll of attorneys in this state.

PEARSON, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.