[No. 4161.   En Banc.   February 9, 1989.]

*In the Matter of the Disciplinary Proceeding Against* JACK L. BURTCH, *an Attorney at Law.*

*Robert D. Welden,* for Bar Association.

*John L. Farra,* for respondent lawyer.

BRACHTENBACH, J.—This is a disciplinary proceeding against Aberdeen attorney Jack L. Burtch, admitted in 1955. The hearing officer entered 113 findings of fact and 12 conclusions of law. The findings and conclusions establish: (1) three violations of RPC 1.5(b) (failure to communicate fees); (2) six violations of RPC 1.3 and 3.2 (lack of diligence and failure to expedite litigation); (3) two violations of RPC 1.4 (failure to keep client fully informed); (4) two violations of RPC 1.15(d) (failure to return client documents and unearned fees); (5) one violation of RLD 13.3 (failure to timely file trust account declaration); and (6) one violation of RLD 2.8 (failure to cooperate with disciplinary investigation).

The hearing officer recommended a reprimand and a 1–year supervised probation. The Disciplinary Board of the Washington State Bar Association adopted the hearing officer's findings and conclusions, but modified the recommended sanction to a 90–day suspension and a 2–year probationary period. One dissenting Board member voted for disbarment.

For reasons discussed hereafter we impose a 45–day suspension from practice and a 2–year supervised probation as set forth hereafter. We note that Burtch had received letters of admonition in 1982 and 1983 for neglect, failure to carry out a contract of employment, delay in completing a probate, and delay in responding to a Bar Association inquiry.

At the outset we categorically reject three assertions made by Burtch in his briefs. First, he "suggests" that the hearing officer would not have signed the findings of fact "if he felt that his decision regarding reprimand and probation was to be appealed by the Bar Association." Reply Brief of Respondent, at 1. That is a gross speculation without support in fact or reason, an argument better not made.

Second, Burtch asserts "It is obvious that the rules of lawyer discipline are only general guidelines . . ." Brief of Respondent, at 14. The rules regulating a lawyer's conduct are not general guidelines; they are mandatory and "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." RPC Preliminary Statement, 104 Wn.2d 1105 (1985). *See* RLD 1.2 ("A lawyer admitted to the practice of law in this state . . . shall be subject to these Rules for Lawyer Discipline.").

The third Burtch position which we reject is his repeated defense that there was "no actual or potential injury" to the involved clients who complained to the Bar Association. This shows a gross lack of understanding of the nature and purpose of the Rules of Professional Conduct. It also demonstrates a disregard for the facts in this case. Financial injury to the client is not a threshold to discipline. The complaining clients had to resort to the Bar Association to resolve their difficulties with Burtch. An isolated incident might be questioned but here six clients were forced to complain. Some clients were compelled to employ other counsel to ascertain the status of their cases and to force a refund of unearned fees. Denial of actual injury to these clients is contrary to the facts.

It is necessary to review the facts of each incident here involved. We accept the findings of fact entered by the hearing officer, Ernest L. Meyer, who is an experienced, highly respected attorney. Each finding is fully supported by the testimony and exhibits. In some instances the testimony from Burtch was at variance to that of his client. However, it has long been the rule of this court that while

we review and evaluate the entire record, "'. . . we ordinarily will not disturb the findings of fact made upon conflicting evidence.' The fact finder can best determine the credibility and veracity of witnesses." (Citations omitted.) *In re Simmons,* 110 Wn.2d 925, 928, 757 P.2d 519 (1988).

1. Maresh dissolution. Ms. Maresh retained Burtch to obtain a dissolution. She paid his requested fee of $500 which she understood was the total fee. Later she paid an additional $100 for "costs." The dissolution hearing took less than 1 hour. Thereafter Burtch rendered an unitemized bill for fees in the amount of $280. The client immediately questioned that amount and asked for an itemized statement. None was given so Ms. Maresh complained to the Bar Association. Maresh then learned that the findings, conclusions and decree had never been entered; they were entered nearly 7 months after the hearing. Burtch ultimately billed Maresh $1,150, credited Maresh for $252.30 paid by her husband, and agreed to reduce the balance to $100. These facts constitute violation of RPC 1.3, 1.4, 1.5(b) and 3.2. We are not impressed by Burtch's assertions that the complaint is without merit, that the client never asked for an itemized statement, and that she was not harmed by the 7–month delay in entering the decree.

2. Werner matter. Burtch was retained by Peterman, a real estate broker, to defend Peterman and a contract seller, Werner. Later, Peterman's insurer retained another attorney, Curtis Janhunen, who sent Burtch a notice of substitution which clearly stated that Janhunen was to represent only Peterman. Burtch thus continued to represent Werner. Janhunen wrote Burtch specifically reminding him that he, Janhunen, was not representing Werner; in fact, a cross complaint was filed by Janhunen against Werner. Upon receiving a motion for default, Burtch contacted Werner for the first time, on a Sunday, and warned him that a default would be taken the next day if he was not represented. Burtch agreed to represent Werner for a fee of approximately $1,000. Werner paid in installments. He requested, by telephone and in writing, a status report.

None was given. Finally Werner complained to the Bar Association and Burtch gave him a status report.

Ultimately Burtch advised Werner to accept a settlement offer to Werner of $3,500. He did not advise Werner of any additional fee owing, but stated that Werner would receive at least a portion of the settlement. Instead Burtch kept the $3,500, billing Werner a total of $4,562.50. This conduct violates RPC 1.4 and 1.5(b).

3. Snyder matter. Snyder retained Burtch to represent him to obtain a dissolution. By November 1984, he had paid $422. The petition was filed in August 1984. Receiving no satisfactory response from his inquiries as to status, Snyder retained another attorney in February 1986. Snyder then learned for the first time that his petition had been dismissed for want of prosecution in October 1985. Burtch had not advised Snyder of the motion for or order of dismissal. After receiving four letters from the new attorney, Burtch finally refunded all fees. This conduct violates RPC 1.3, 1.4 and 3.2.

4. LaBrec and other cases. In 1976 Burtch agreed to represent LaBrec and three other plaintiffs in a suit against the State. He prepared and served a summons and complaint. There was no fee agreement with the clients, but they paid $500 to cover bond costs.

From 1977 until after a complaint to the Bar Association in 1986, Burtch did nothing. Then Burtch demanded payment of $750 from each of the four plaintiffs. The defendant's motion for summary judgment was granted and affirmed on appeal. *LaBrec v. Department of Empl. Sec.,* 52 Wn. App. 188, 758 P.2d 501 (1988).

Burtch claims he agreed to process the case only if and when he had time. He claims he proceeded only because of "unfair pressure" by the Bar Association and that the complaint against him was false and frivolous. We are not impressed with this explanation. This conduct violates RPC 1.3 and 1.4.

5. Keim matter. In July 1985 Mr. Keim engaged Burtch to represent him, for an agreed hourly rate, to enforce a

foreign dissolution decree and child custody order. On November 1, 1985, Keim's mother, who was assisting him with payment of fees, requested an itemized statement from Burtch who requested a payment of $1,000 representing $500 for application to Burtch's fee and $500 for a court appointed mediator. No itemized statement has ever been furnished. By March 1986 Keim had paid Burtch a total of $2,065. No court appointment of a mediator was obtained.

In May 1986, Keim engaged a new attorney who wrote Burtch, advising of termination of Burtch's services and requested a refund of $1,250 in unearned fees. Burtch, instead of responding to the new attorney, contacted Keim requesting that he be allowed to represent Keim, who declined Burtch's request. Having no response from Burtch, the new lawyer, 3 months later, moved to force Burtch's withdrawal. Burtch withdrew and refunded $500 to Keim. Just before the hearing herein Burtch refunded another $500.

Burtch admits he failed to keep his client reasonably informed but denies failure to act with reasonable diligence, denies improper action when discharged, and denies improper conduct in the refund of unearned fees. The evidence supports a conclusion that Burtch violated RPC 1.3, 1.4 and 3.2.

6. Little case. In July 1985 Little employed Burtch to pursue a claim against Lord Bros. Contractors, Inc., and the City of Raymond. Little paid $450 at that initial meeting. In December 1985 Burtch billed Little including "dictation of pleadings, arranging for filing and service." The bill also showed a disbursement of $70 to the Pacific County Clerk.

In April 1986, Little advised Burtch that he was discharging him. Burtch asked that Little not do so and promised to file a claim on the City the next day. Little understood this would be done without additional charge. Burtch billed $150 for filing and serving a claim on the City. Little discharged Burtch and requested his file. Little then learned his suit had never been filed. Burtch has never furnished the client his file nor returned any money,

including the "filing fee." Little obtained a default judgment against Burtch for $500, which is unpaid. Burtch's version of the matter is contrary to the client's, and he challenges Little's veracity. The hearing officer believed the client. This conduct violates RPC 1.15(d), 1.3 and 3.2.

7. Trust account declaration. Burtch did not file his 1985 declaration of his trust account compliance with RPC 1.14. It was due January 1, 1986. In response to a Bar Association notice, Burtch on April 4, 1986, filed a declaration that he maintained a trust account but which did not comply with RPC 1.14. A proper declaration, despite several letters from the Bar, was not filed until August 27, 1986.

Burtch's violation was failure to comply with the IOLTA requirements of RPC 1.14(c). He admits his error and lack of diligence, but "questions the right of the court to arbitrarily require a third party's money . . . to be appropriated in this manner." Reply Brief of Respondent, at 24. Apparently he is unaware of the extensive notice and publicity about the IOLTA procedures, including an adversary public hearing by this court on that subject. His failure violates RPC 1.14(c) and is a ground for discipline under RLD 13.3(b).

8. Failure to cooperate. Despite assurances to the Bar Association counsel that he would respond to the Werner and Snyder complaints, he did not do so. Burtch did not appear for a deposition for which he had been subpoenaed. Two weeks later he blamed his secretary and trial schedule for his failure to appear. Burtch did not respond to the Keim complaint. Not until Bar Association counsel advised Burtch that counsel was recommending to the Disciplinary Board that a petition for immediate suspension be filed did Burtch respond to the four pending complaints.

In concluding, the hearing officer was particularly troubled by what he described as Burtch's

rather cavalier attitude toward the Bar Association when all these things were brought to his attention. That in my opinion is the most damning evidence you have here on the problem whether or not the circumstances that

brought on all these difficulties are now behind him and he will not be plagued again with a series of complaints from his clients.

Closing Argument and Oral Decision, at 24. Burtch's conduct is a clear violation of RLD 2.8.

We have detailed the factual foundation of Burtch's violations. His conduct shows a pattern of neglect, failure to communicate, failure to properly handle fee arrangements, lack of diligence, violation of the trust account requirement, and failure to cooperate in the Bar Association's investigation.

This brings us to the appropriate sanctions, the most troublesome element of many discipline matters.

In a recent case, *In re Yates*, 110 Wn.2d 444, 755 P.2d 770 (1988), we summarized much of the court's philosophy and approach to sanctions. That case and ones cited therein have made extensive reference to and use of the *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986).

Without repeating all of the text of the *Yates* opinion, we look first to the four initial questions stated.

First, what ethical duty did the lawyer violate? Our recitation of the facts shows serious and repeated violations as described. Second, what was the lawyer's mental state? This question will be dealt with in the subject of aggravating and mitigating circumstances. Third, what was the extent of the actual or potential injury caused by the misconduct?

The findings of the hearing officer on their face demonstrate actual injury in some cases, such as the necessity of hiring another lawyer and the deprivation of unearned fees. Potential injury was present in every instance. Burtch seems to fail to recognize the very real harm he has caused to those persons who put their trust and confidence in his care. People involved in a dissolution, a child custody conflict or a lawsuit often are in a period of emotional and

financial turmoil. Of necessity they look to the legal profession for advice and resolution of their problems and ultimately for the satisfactory as possible end to the tempest and turmoil in which they are embroiled. Sometimes they are difficult to deal with; often they are dissatisfied with the results in their traumatic times.

One thing is certain. Those clients do not need the added agitation of a neglectful, undiligent lawyer with concomitant problems of fees, lack of information, lack of reasonable progress and final resort to the offices of the Bar Association. The Rules of Professional Conduct rightfully condemn such conduct. As the Preamble to the RPC states, the ultimate sanction to the lawyer, and indeed to the profession, is the loss of respect and confidence of the members of the legal profession. That injury occurred here.

Fourth, are there aggravating or mitigating circumstances? Both are present here. The *ABA Standards* refer to 10 aggravating factors. *In re Yates, supra* at 452. The ones pertinent here are (a) prior disciplinary offenses, (b) a pattern of misconduct, (c) multiple offenses, (d) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply (Burtch contends his lack of cooperation was not intentional), (e) substantial experience in the practice, and (f) indifference to making restitution. The last point is his failure to refund unearned fees and requiring a client to sue on one instance.

The *Standards* set forth 13 possible mitigating factors, *In re Yates, supra* at 452–53. Possibly 7 of those factors are present. The hearing officer did not find a dishonest or selfish motive in Burtch's conduct. To some degree Burtch displayed a cooperative attitude but we give it little weight because it came when he was faced with dire consequences. The only evidence of character and reputation came from a retired Superior Court Judge before whom Burtch had practiced extensively. Judge Kirkwood described Burtch as prepared, a very good advocate with a very heavy work

load, and as having a good reputation in the legal community.

As to interim rehabilitation, Burtch professed to having learned valuable lessons from these proceedings and to have changed his practices and procedures in recognition of the problems he had encountered. Burtch exhibits some remorse, but understandably justifies his conduct where he differs with the clients' recollection. He recognizes much of his difficulty stems from his failure to communicate with his clients and his lack of written memorandum of his agreements with his clients.

The major and decisive mitigating factor stems from personal and emotional problems which may have led to a degree of mental impairment. A dispute with a former partner led to a 1983 judgment against Burtch in excess of $100,000. Financial disaster ensued. Burtch was unable to supersede the judgment while it was on appeal. Bank accounts were garnished, execution issued against his books and equipment, he lost his home and office building. Depression naturally set in for Burtch and his wife who had been his long–time bookkeeper. They separated. His long–time secretary left. He and his wife filed a Chapter 11 proceeding. He and his wife have reconciled, she is back in his office. The judgment has been resolved. Burtch expresses a belief that the problems which led to this series of events are resolved and that he can practice properly as he had done without client complaint for over 25 years.

We find that these personal and emotional mitigating facts justify more leniency than we otherwise would be inclined to grant. Yet we cannot ignore the harm to the clients, the profession, and the administration of justice. The reasons for the violations of the Rules of Professional Conduct may explain those violations but they do not excuse them. The hearing officer recommended a reprimand. We believe that is not adequate. The Disciplinary Board imposed a 90–day suspension. While the record fully justifies that length of suspension, we conclude that the same purpose can be accomplished with a lesser period of

suspension. Burtch will still suffer the economic loss of suspension, but in a lesser amount; he must comply with the appropriate provisions of RLD 8 and other applicable rules; he will be subjected to the loss of reputation inherent in any suspension.

In view of the doubts the hearing officer expressed in his oral decision and reflected in the findings, we conclude that a period of probationary supervision is warranted.

Therefore, it is ordered: (1) Jack L. Burtch is suspended from the practice of law for a period of 45 days. (2) Burtch is placed on probation for a period of 2 years pursuant to RLD 5.2. The conditions of probation are: (a) Burtch must not engage in conduct similar to that detailed in this opinion in the future. (b) The Disciplinary Board shall appoint a lawyer to supervise this probation pursuant to RLD 5.2(a); however, that supervisor shall not be a former law partner of Burtch as he suggested. (c) The supervisor shall conduct regular and frequent reviews not less than monthly, and file regular reports with the Bar Association, not less than quarterly, of Burtch's legal activities. The reviews shall be conducted with Burtch present. (d) The supervisor shall immediately report to the Bar Association if it appears that Burtch is again neglecting his clients' affairs or failing to account to his clients for his fees, or if it appears that Burtch is in violation of any applicable rules regulating a lawyer's conduct. (3) Upon reinstatement, Burtch shall submit to an evaluation by the Lawyer's Assistance Program to determine whether any counseling or treatment is required in order to avoid repetition of his past misconduct.

Burtch has not challenged costs assessed below; the award is affirmed. Costs herein await compliance with RLD 5.7(f).

CALLOW, C.J., UTTER, DOLLIVER, DORE, PEARSON, ANDERSEN, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.