[No. 200,469-5. En Banc.]
Argued October 16, 2007. Decided January 31, 2008.

*In the Matter of the Disciplinary Proceeding Against* JACK L. BURTCH, *an Attorney at Law.*

878

*Jack L. Burtch*, pro se.
*Jonathan H. Burke*, for the Bar Association.

¶1 C. JOHNSON, J. — This is a disciplinary proceeding against attorney Jack L. Burtch, admitted to practice in 1955. This proceeding involves the question of whether Mr. Burtch should be disbarred because of a long history of misconduct, testifying falsely and presenting false evidence to a court and/or during disciplinary proceedings, refusing to pay restitution as ordered by the Washington State Bar Association Disciplinary Board (Board), and refusing to return unearned fees to a client. Disbarment is the American Bar Association's (ABA) presumptive sanction for attorneys who give false testimony and present false evidence in court, cause serious injury to the client or the public,

and knowingly violate disciplinary orders, under the ABA's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*).

¶2 Mr. Burtch was charged by the Washington State Bar Association (WSBA) with seven counts of misconduct under the Rules of Professional Conduct (RPC). The hearing officer concluded Mr. Burtch had committed six of the seven charged counts of misconduct: (1) violation of RPC 3.1 (frivolous defense), (2) violation of RPC 3.3(a) (candor toward tribunal) and RPC 8.4(c) (misrepresentation), (3) violation of RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal) and RPC 8.4(*l*) (violation of a sanction imposed under the Rules for Enforcement of Lawyer Conduct in connection with a disciplinary matter), (4) violation of RPC 1.3 (diligence), (5) violation of RPC 1.4(b) (communication) and RPC 1.5(b) (communication of reasonable fees), (6) violation of RPC 1.5(a) (reasonable fees) and former RPC 1.15(d) (1985) (failure to return unearned fees). The Board unanimously upheld the hearing officer's findings of fact and conclusions of law and determined disbarment is the appropriate sanction. Mr. Burtch does not attempt to defend his actions but instead claims, first, that he did not receive a fair hearing and, second, that the findings (although he does not specify which findings) are not supported by the evidence. The WSBA asserts that because the presumptive sanction for five of the six counts of misconduct is disbarment, and because no mitigating factors were found, disbarment is appropriate in this case. We affirm the decision of the Board and disbar Mr. Burtch.

## FACTUAL HISTORY AND MISCONDUCT

■ ¶3 Before beginning the discussion of this case, we note that Mr. Burtch is no stranger to the disciplinary process. In 1989, Mr. Burtch was suspended by this court for, among other things, lack of diligence in pursuing client matters, failure to communicate fees, failure to expedite his clients' cases, lying to his clients about the status of their

cases, and failure to return unearned fees. *In re Disciplinary Proceeding Against Burtch*, 112 Wn.2d 19, 770 P.2d 174 (1989). What is troubling in this case is that the actions of Mr. Burtch, by and large, mirror those in prior cases. Mr. Burtch was also disciplined for similar misconduct in 1982, 1983, and 2000. This extensive misconduct has damaged public confidence in the legal profession and the legal system as a whole. We have a duty to protect the public from any further harm. The entire record has been reviewed, and we have adopted the findings, conclusions, and recommendation of disbarment.

*McGuin Grievance*

¶4 Mr. Burtch represented Donna McGuin from approximately 1988 to the end of 1996 in separate, but related, matters. Twice during his representation of McGuin, Mr. Burtch incurred monetary sanctions for his conduct toward the court. Mr. Burtch tried McGuin's case in December 1993. During the course of the trial, McGuin rejected a settlement offer; the jury returned an adverse verdict.

¶5 McGuin has consistently maintained that she understood Mr. Burtch had agreed to a contingent fee agreement with payment of costs and sanctions. Mr. Burtch has at various times confirmed that he had agreed to a contingent fee agreement on the condition that McGuin pay some fees and provide him with sufficient funds to pay sanctions. Throughout this proceeding, Mr. Burtch has maintained the original agreement was an hourly agreement, which was converted to a contingent fee agreement before trial.

¶6 On January 29, 1997, Mr. Burtch sent McGuin an invoice claiming she owed his firm $11,738.24 in addition to amounts paid during the 1988 to 1996 period. On January 30, 1997, Mr. Burtch received a cover copy of McGuin's letter and a grievance cover sheet from the WSBA. Mr. Burtch sent the invoice to collection on April 2, 1997. McGuin's original letter to the WSBA appears to complain about Mr. Burtch requiring her to pay sanctions levied against him. The WSBA treated the letter as a grievance.

¶7 The relationship between Mr. Burtch and McGuin was the subject of a prior disciplinary hearing on September 11, 2000. During this proceeding, Mr. Burtch testified he had an hourly fee agreement with his client, which was transformed into a contingent fee agreement. Mr. Burtch also testified the invoice had been sent in error. The hearing officer concluded Mr. Burtch owed McGuin $2,640.15 in restitution because he forced her to pay the sanctions which were levied against him, and recommended that he be suspended for a period of six months. Mr. Burtch appealed.

¶8 The Board heard Mr. Burtch's argument on appeal on April 13, 2001. Mr. Burtch again testified he had agreed to a contingent fee arrangement with McGuin. The Board reduced the hearing officer's recommended sanction to admonition based on its reversal of one count, and ordered Mr. Burtch to pay McGuin $2,640.15 with 12 percent interest on that amount from January 29, 1997, until paid in full. Mr. Burtch filed an exception to costs and expenses on August 1, 2001. The WSBA informed him the restitution payment was to be paid by September 5, 2002. The order became final September 19, 2002.

¶9 In an attempt to collect the restitution as ordered by the Board, McGuin filed an action in district court in 2004. Mr. Burtch defended this action by claiming he was entitled to an offset from the restitution by the amount contained in the invoice sent January 29, 1997. Mr. Burtch testified in district court that "at all times" his agreement with McGuin was for an hourly rate, not a contingent fee agreement, and McGuin owed him over $11,000. His testimony was very clear the payment agreement "was always an hourly rate," but he had lost the hourly rate agreement, thus he could not prove the billing agreement. Tr. of District Ct., WSBA Ex. A-6. This frivolous claim to an offset, after an explicit order from the WSBA to pay the amount in full, constitutes a violation of RPC 3.1.

¶10 The district court judge ordered Mr. Burtch to pay the amount directed by the Board as restitution, but inadvertently neglected to include interest. This order

did not overrule the order by the Board. Mr. Burtch paid $2,640.15 but has not paid interest as ordered by the Board. By refusing to pay restitution to McGuin as required by the Board, Mr. Burtch violated RPC 3.4(c) and RPC 8.4(*l*).

## Moreland Grievance

¶11 Mr. Burtch entered into an attorney-client relationship with Roxie Moreland on August 16, 2004. Mr. Burtch was hired to bring a bad faith claim against Farmer's Insurance and to take action regarding a lien that had been filed against Moreland's property. Moreland, and a contractor she brought to their initial meeting, Gary Randall, informed Mr. Burtch that action needed to be taken promptly on the claim. The statute of limitations would expire at the end of the year, and Moreland had a toxic mold problem in her home. Mr. Burtch indicated to Moreland he would have the lien taken care of in a week and would file the lawsuits within two weeks.

¶12 Mr. Burtch had Moreland sign a retainer agreement that refers to a $2,000 nonrefundable retainer. Moreland has difficulty reading and testified she simply signed where Mr. Burtch instructed her to do so. Mr. Burtch maintains he adequately explained the payment of the retainer and observed Moreland read and sign the agreement. Br. of Pet'r at 7-8.

¶13 For several months, Mr. Burtch took no action to obtain further information regarding the case. Moreland first contacted Mr. Burtch on September 10 and 14, 2004, expressing concern whether he had made any effort to remove the lien. On September 27, 2004, Moreland informed Mr. Burtch she felt he was misrepresenting her and wanted her file returned. Mr. Burtch assured her he would complete the promised services within a week. He did not work on the file again until October 25, 2004.

¶14 Moreland contacted Mr. Burtch in late November, setting a deadline for completion of the promised services. Mr. Burtch failed to complete the work. Moreland termi-

nated Mr. Burtch's services on December 6, 2004, and requested a refund of $1,600, less than 30 days before the statute of limitations was set to expire. Mr. Burtch refused to refund the fees and instead produced an accounting to Moreland which documented provision of services valued in excess of the $2,000 retainer already paid by Moreland. The hearing officer did not find the accounting credible.

¶15 Mr. Burtch failed to adequately and accurately explain the fee agreement to his client, Moreland. This is a violation of RPC 1.4(b) and RPC 1.5(b). Furthermore, by failing to return unearned fees and failing to timely withdraw from the case, Mr. Burtch violated RPC 1.5(a) and former RPC 1.15(d).

¶16 There is no evidence, other than his testimony, that Mr. Burtch did anything other than make one call to Randall regarding the services he allegedly provided Moreland. Mr. Burtch alleges he did spend time on the case and was just getting ready to dictate the complaint at the time he was terminated. Moreland sought alternative representation and was able to commence her legal action in a timely fashion.

¶17 Mr. Burtch's lack of action in Moreland's case is a violation of RPC 1.3, requiring lawyers diligently represent their clients. The circumstances of her claim and the toxic living conditions of her home required immediate action.

## ISSUES PRESENTED

(A) Whether the hearing officer properly considered evidence on the issue of pattern of misconduct which was not charged in the formal complaint.

(B) Whether the hearing officer properly excluded expert testimony regarding the rules of professional conduct.

(C) Whether the hearing officer properly allowed impeachment and reputation evidence to be admitted.

(D) Whether the hearing officer properly found that evidence met the requirements of reputation evidence.

(E) Whether the hearing officer properly denied petitioner's motions for mistrial.

(F) Whether clear preponderance of the evidence is the correct burden of proof in lawyer disciplinary proceedings.

(G) Whether the findings of fact are supported by substantial evidence.

## ANALYSIS

### Standard of Review

 ¶18 This court has plenary authority to determine the nature of lawyer discipline, but it has delegated specific responsibilities to the WSBA. A hearing officer makes findings of fact, conclusions of law, and recommendations to the Board. The Board is free to adopt, modify, or reverse the hearing officer's findings, conclusions, or recommendations. *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 461, 120 P.3d 550 (2005).

■ ■ ¶19 We give considerable weight to the hearing officer's findings of fact, especially in regard to the credibility of witnesses, and will uphold those findings so long as they are supported by substantial evidence. *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 209, 125 P.3d 954 (2006). Also, a unanimous decision of the Board will be upheld in the absence of a clear reason for departure. *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003).

■ ■ ¶20 The hearing officer shall refer to Washington Rules of Evidence as guidelines for evidentiary rulings. Rules for Enforcement of Lawyer Conduct (ELC) 10.14(d)(2). Evidentiary rulings made by the hearing officer will be reviewed for abuse of discretion. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 341, 157 P.3d 859 (2007).

¶21 Mr. Burtch gives two general assignments of error.[1] The issues associated with each error are discussed below.[2]

## 1. Fair Hearing

¶22 Mr. Burtch asks that the fairness of the proceeding be based on a view of the record of the proceeding as a whole, not on a few isolated comments. We have reviewed the entire record and find not only is there an appearance of fairness, but the hearing officer made concessions throughout the five-day hearing in an attempt to address Mr. Burtch's concerns at the time they were expressed.[3] Mr.

---

[1] Mr. Burtch alleges (1) he was not given a fair hearing and (2) the findings of fact are not supported by substantial evidence.

[2] Since Mr. Burtch presents no argument challenging or analyzing the specific rule violations involved in this case, we analyze only the arguments he has presented in his briefs and do not separately discuss each rule violated.

[3] The hearing officer allowed for witnesses to be called out of order to accommodate Judge Kirkwood's schedule. Tr. of Proceedings (TR) at 17. Mr. Burtch was allowed to act as cocounsel days two through five of the hearing and make his own objections during his testimony when questioned by the WSBA. TR at 170-71. Mr. Burtch was allowed to call expert opinion testimony pertaining to the interpretation of the RPC; a question of admission at the discretion of the hearing officer. *See, e.g.*, TR at 41, 177, 184-85, 715-17. The hearing officer allowed an expert

Burtch's specific allegations regarding the fairness of the proceedings are addressed below.

## Pattern of Misconduct

¶23 Mr. Burtch alleges that the hearing officer improperly considered his pattern of misconduct when it was not charged in the formal complaint. Although ELC 10.3(a)(3) requires the formal complaint to state the respondent's acts in order to inform the respondent of the nature of the allegations of conduct, "pattern of misconduct" is an aggravating factor in ABA *Standards* that may increase presumptive sanctions. ABA STANDARDS std. 9.22(c). Further, ELC 10.15(b)(1)(A) states that evidence of prior acts, although not admissible to prove character or impeach respondent's credibility, may be admitted for other purposes. Here the other purposes for admission were to show that Mr. Burtch has a pattern of misconduct, an aggravating factor, and to show evidence of his mental state, knowledge, or intent when he committed the misconduct. Mr. Burtch's prior disciplinary proceedings involved similar conduct to that at issue in this proceeding, demonstrating that he, at a minimum, had knowledge his actions were ethical violations which could lead to sanctions as they had in the past.

¶24 Aggravating factors may be considered without being formally charged in the complaint. Mr. Burtch's pattern of misconduct did not need to be charged in the formal complaint to be considered by the hearing officer. The hearing officer did not abuse her discretion by admitting evidence and hearing testimony pertaining to Mr. Burtch's pattern of misconduct.

## Expert Opinions

¶25 Mr. Burtch contends the hearing officer denied him the opportunity to call expert witnesses to estab-

witness to be called by Mr. Burtch without ample notice to the WSBA. TR at 717. Where any doubt existed regarding the admissibility of evidence, those doubts were resolved in favor of Mr. Burtch. Hr'g Officer's Findings, Conclusions, and Recommendations at 8.

lish the standard of care in the legal industry and interpretation of the RPC. The WSBA argues that expert testimony on the RPC is not admissible in disciplinary hearings. Mr. Burtch was allowed to call Judge Kirkwood, John Farra, and Steven Johnson as expert witnesses and was allowed leniency to conduct questioning concerning their interpretations of the RPC. Judge Kirkwood's testimony was limited once it was established he has been retired from the practice of law and the judiciary for 24 years. John Farra's expert testimony was limited after the hearing officer recognized that in a prior disciplinary proceeding, he asserted the position on behalf of Mr. Burtch that " '[i]t is obvious that the rules of lawyer discipline are only general guidelines . . . .' " *Burtch*, 112 Wn.2d at 21 (second alteration in original) (quoting Br. of Resp't at 14). As we recognized in Mr. Burtch's prior proceeding, the rules regulating a lawyer's conduct state the minimum level below which no lawyer can fall, not general guidelines. Because Farra did not appear to respect this basic premise of our ethical rules and Judge Kirkwood was not familiar with current ethical standards, these witnesses may not have qualified as experts and it was within the hearing officer's discretion to limit their expert testimony.

¶26 Under Evidence Rule (ER) 702, an expert may testify if the testimony would assist the trier of fact. The party calling the expert must demonstrate that the witness qualifies as an expert based on "knowledge, skill, experience, training, or education." ER 702. Mr. Burtch called two lawyers and Judge Kirkwood as expert witnesses, and was given the opportunity to demonstrate their expertise. Neither lawyer had a specialty in ethics or any other specialty that would assist the trier of fact in this case, the hearing officer, also a lawyer. Mr. Burtch did not demonstrate, lay foundation, or give any reason that any of these "experts" were more knowledgeable or experienced in the rules of ethics than the trier of fact herself. Thus, the hearing officer did not err in limiting questions regarding RPC interpretation given by these witnesses.

 ¶27 In *Eriks v. Denver*, 118 Wn.2d 451, 824 P.2d 1207 (1992), we held that whether an attorney's conduct violated the rules of professional conduct is a question of law. The trial court may properly disregard expert testimony containing conclusions of law. *Eriks*, 118 Wn.2d at 457-58. The hearing officer did allow limited expert testimony by Mr. Burtch's witnesses and was permitted to give as much weight as she thought suitable to any expert testimony given.

¶28 Testimony by an expert regarding the ultimate issue is allowed, but the trial court has discretion to reject the expert testimony in whole or in part. *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 399, 722 P.2d 787 (1986). The hearing officer did not err by omitting some portions of expert testimony and was not required to give any weight to the testimony that was admitted. This was not an abuse of discretion.

Admission of Impeachment and Reputation Evidence

 ¶29 Mr. Burtch objects to the admission of character and reputation evidence at the hearing. Yet Mr. Burtch called his own "character and reputation" witness, Judge Kirkwood, at the beginning of the hearing, thus opening the door on the subject of his character. Judge Kirkwood was asked questions by Mr. Burtch's counsel pertaining to his reputation and character. An example is shown below:

Q: Did you have any reason to question [Mr. Burtch's] representations to the court on any given case?

A: Never.

Q: What other observations did you make with regard to Mr. Burtch's career, what have you been personally aware of?

A: He was a good lawyer, and I had no problems with him.

Tr. of Proceedings (TR) at 36.

¶30 Mr. Burtch alleges there was no opinion asked of Judge Kirkwood as to his honesty. Asking a witness wheth-

er he had any reason to question a lawyer's representations in his courtroom is a question inquiring into the reputation for honesty of that lawyer. Judge Kirkwood's answer is essentially that he had no reason to question Mr. Burtch's honesty. Allowing later witnesses to testify concerning Mr. Burtch's reputation as a lawyer and his reputation for honesty was rebuttal testimony after Mr. Burtch's own character witness testified.

¶31 Mr. Burtch further objects to the cross-examination and impeachment of Judge Kirkwood. It was appropriate on cross-examination to attack the credibility of a character witness who attested he had no reason to question Mr. Burtch's honesty or legal reputation where Mr. Burtch's former acts of misconduct were publicized in a small community.

¶32 Mr. Burtch alleges the hearing officer committed egregious error in allowing alleged specific acts of misconduct to be put in evidence. Br. of Pet'r at 11. Hearing officers should be guided in their evidentiary and procedural rulings by the principle that disciplinary proceedings are neither civil nor criminal. ELC 10.14(a). The hearing officer admitted, for impeachment purposes, a newspaper article containing a story about a prior sanction against Mr. Burtch and later admitted documents connected to the same case.

¶33 Mr. Burtch argues that extrinsic evidence showing prior acts of misconduct may not be admitted for impeachment purposes. The hearing officer admitted this evidence not only for impeachment of Mr. Burtch and Judge Kirkwood but to show intent and the question of absence of mistake under ER 404(b). TR at 637. Mr. Burtch had stated during his testimony that various statements during prior disciplinary proceedings and district court were mistakes or unintentional, and statements made during these proceedings were at issue here. It was within the hearing officer's discretion to admit ample evidence to help her determine the credibility of the witnesses and the mental state of Mr. Burtch during multiple acts of misconduct.

¶34 The Washington Rules of Evidence are guidelines in this type of hearing. ELC 10.14(e) also states the "evidence standards in this rule are based on the evidence provisions of the Washington Administrative Procedure[ ] Act, which . . . should be looked to for guidance." (Citation omitted.) The evidence rules do not require strict adherence in a hearing such as this one, which is neither civil nor criminal in nature, although generally the rules do apply. The hearing officer should err on the side of allowing in evidence in order to examine the full record when determining whether a sanction as serious as this, disbarment, is appropriate.

¶35 Further, any argument that the article prejudiced the trier of fact in the hearing is without merit. First, the substance of the article was brought in by testimony later during Mr. Burtch's cross-examination regarding the *Vissers* case,[4] and second, the trier of fact, the hearing officer, is not as easily prejudiced as a jury would be in a criminal or civil proceeding. The hearing officer addressed the ER 403 balancing test[5] at the beginning of day four of the hearing, stating that the evidence admitted was highly probative of Mr. Burtch's conduct during judicial proceedings at issue in this hearing. This probative value outweighed any prejudicial effect. The introduction of this extrinsic evidence did not prejudice Mr. Burtch in any way and did not affect the fairness of the hearing overall.

¶36 Mr. Burtch also objects to the testimony of Gary Randall, who was questioned concerning Mr. Burtch's reputation for honesty in the community. However, the issue of character and reputation testimony was brought up in the beginning of the hearing. ER 404(a)(1) makes it clear that testimony about a person's good reputation may be rebutted with testimony about the person's bad reputation. 5A KARL

---

[4] *Vissers v. Coastal Cmty. Church*, noted at 108 Wn. App. 1031, 2001 Wash. App. LEXIS 3021.

[5] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 405.7 (5th ed. 2007). The hearing officer informed parties from the beginning of the hearing that reputation was a factor in the proceedings and that limited character and reputation testimony would be admitted. Mr. Burtch did not object to the ruling, and his counsel immediately called his first character witness, Judge Kirkwood. Admission of character and reputation evidence by the hearing officer was not an abuse of discretion.[6]

## Motions for Mistrial

¶37 Mr. Burtch made two motions for mistrial during the hearing, alleging the hearing officer failed to allow his expert to testify fully, that he was being denied a fair hearing, and that he was the subject of character assassination. The hearing officer's denials of motions for mistrial are reviewed for an abuse of discretion. *See State v. Rodriguez*, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). Mr. Burtch does not make any arguments as to why these rulings were an abuse of discretion, and there is no indication from the record of any abuse of discretion or prejudice to Mr. Burtch. The hearing officer appeared to give proper consideration to the motions for mistrial in the transcript and clearly explained her reasoning in denying the motions.[7] Thus, the denials of the motions are not considered an abuse of discretion.

## 2. Findings of Fact

## Clear Preponderance of the Evidence

¶38 Disciplinary counsel has the burden of establishing acts of misconduct by clear preponderance of the

---

[6] In his briefing, Mr. Burtch asks the question, "[d]id such evidence that was admitted by the hearing officer meet the requirements of reputation evidence?" Beyond this question, the brief does not specify any arguments or cite any part of the transcript to point out an error in characterizing evidence as reputation evidence. This issue was not sufficiently briefed to be considered. Br. of Pet'r at 4.

[7] TR at 172-78, 641.

evidence. ELC 10.14(b). Mr. Burtch asks for a ruling that the burden of proof be changed to clear, cogent, and convincing evidence. We have consistently held that clear preponderance of the evidence is the relevant burden in disciplinary proceedings, and there is no reason to change the burden at this time, linguistically or otherwise. *See, e.g., In re Disciplinary Proceeding Against Carpenter*, 160 Wn.2d 16, 23, 155 P.3d 937 (2007).

Substantial Evidence Supports Findings of Fact

¶39 Mr. Burtch argues that because expert opinion on conclusions of law is treated differently from expert opinion on factual data, and because the hearing officer treated violations of the RPC as conclusions of law, all of the findings of fact of the hearing officer should be treated as conclusions of law and reviewed de novo. Review of the findings of fact show the findings of fact are just that, factual information. The conclusions of law are clearly separated from factual findings. As stated above, findings of fact will be reviewed for substantial evidence.

¶40 Mr. Burtch appears to challenge all but 30 of the 184 findings of fact made by the hearing officer. RAP 10.3 requires an appellant to present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record. Mr. Burtch's failure to make separate assignments of error for each challenged finding of fact, and conclusory remarks such as "it is obvious" that none of the testimony of witnesses supports the findings of fact, does not demonstrate insufficient evidence in this case. Reply Br. at 6. Furthermore, as we stated in Mr. Burtch's previous disciplinary proceeding, it has long been the rule of this court that while we review and evaluate the entire record, we ordinarily will not disturb the findings of fact made upon conflicting evidence. *Burtch*, 112 Wn.2d at 21-22.

¶41 Mr. Burtch asserts that to set out each finding of fact separately would have been unduly repetitive and confus-

ing. Reply Br. at 4. Yet failing to pinpoint any argument as to why specific findings of fact are not supported by substantial evidence does not comply with the Rules of Appellate Procedure and would require a reviewing court to unearth arguments from the record for the benefit of an appellant, if any exist at all. Because Mr. Burtch does not sufficiently brief his challenges to the findings of fact and the record does show substantial evidence in support of those findings, we affirm the findings of fact adopted by the Board. *See Whitney,* 155 Wn.2d at 467 (holding that where challenges to findings of fact are insufficiently briefed, we will decline to address them).

## Mitigating and Aggravating Factors

¶42 In determining the sanction to be imposed for attorney misconduct, the court will utilize the ABA *Standards* as a basic, but not conclusive, guide. We first look at the ethical duties violated, as discussed above. Next we examine the lawyer's mental state, followed by consideration of the actual or potential injuries caused by the misconduct. Finally, we ask if there are any aggravating or mitigating factors to consider in these circumstances. *See In re Disciplinary Proceeding Against Yates,* 110 Wn.2d 444, 755 P.2d 770 (1988).

¶43 With regard to Mr. Burtch's mental state, the hearing officer found that Mr. Burtch committed two acts of misconduct intentionally, three acts knowingly, and one arguably negligent act. Because the hearing officer's findings of fact are supported by substantial evidence and we defer credibility determinations to the hearing officer, we affirm the Board's and the hearing officer's findings concerning mental state as well.

¶44 The hearing officer also found actual and potential injury for both aggrieved clients. McGuin was seriously injured by being forced to resort to small claims court to obtain her money after Mr. Burtch was ordered by the Board to pay her in full, and injured by Mr. Burtch's

lack of interest payment. Mr. Burtch's conduct in the McGuin grievance also injured the legal system. Misconduct such as this, asserting a frivolous claim and submitting false evidence, causes the public to lose confidence in our legal system and respect toward the legal profession.

¶45 Failure to diligently act in the Moreland case caused Moreland serious injury by delaying the time she could take remedial action in a home contaminated with toxic mold. Moreland was also injured by the deprivation of her rightful return of unearned fees. Mr. Burtch caused serious injury to both clients and the legal system.

¶46 The last step in determining if disbarment is the appropriate sanction is an examination of any aggravating or mitigating factors that could apply to Mr. Burtch's misconduct. Under the ABA *Standards*, the court first determines the presumptive sanction and then whether the sanction should be heightened or reduced due to applicable aggravating or mitigating factors. *Whitney*, 155 Wn.2d at 468.

## Presumptive Sanctions

¶47 Disbarment is the presumptive sanction for cumulatively advancing a meritless defense in district court, failing to pay restitution as ordered by the Board, failing to adequately explain the fee agreement, charging unreasonable fees, and failing to return unearned fees. ABA *Standards* std. 7.1 states, in relevant part, disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer and causes serious injury to the client, the public, or the legal system. Also, because Mr. Burtch has engaged in this type of misconduct before, and the hearing officer found he acted intentionally or knowingly on most counts, ABA *Standards* std. 8.1 also applies. ABA *Standards* std. 8.1(a)(b) states, in relevant part, disbarment is generally appropriate when a lawyer intentionally or knowingly violates the terms of a

prior disciplinary order and such violation causes injury and when a lawyer has been suspended for the same or similar misconduct and engages in similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

¶48 The presumptive sanction for false statements to the court and the Board is disbarment. ABA *Standards* std. 6.11 states, in part, disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

### Identifying the Aggravating and Mitigating Factors

■ ¶49 The appropriate sanction in this case will be determined based upon our assessment and evaluation of the aggravating and mitigating factors. We consider aggravating and mitigating factors which may alter the presumptive sanction of disbarment in this case. The court will generally adopt the Board's recommended sanction unless the sanction departs significantly from sanctions imposed in other comparable cases or the Board was not unanimous in its decision. *In re Disciplinary Proceeding Against Haley*, 156 Wn.2d 324, 339, 126 P.3d 1262 (2006).

### Aggravators

■ ¶50 The Board upheld the hearing officer's findings of 8 aggravating factors for McGuin's case and 10 aggravating factors for Moreland's case. We affirm, based on the record, the following aggravators: (1) prior disciplinary record, (2) conduct showing dishonest or selfish motive, (3) pattern of misconduct, (4) misconduct establishing multiple violations of the RPC and causing serious harm to two disabled clients, (5) bad faith in obstructing disciplinary proceedings by submitting false evidence and engaging in

conduct disruptive to proceedings, (6) submitting false time records and testifying falsely, (7) refusal to acknowledge the wrongful nature of the conduct, (8) vulnerable clients, (9) substantial experience in the practice of law, and (10) indifference to making restitution to either client.

## Mitigating Factors

¶51 The Board affirmed the hearing officer's finding that there are no mitigating factors specific to McGuin's or Moreland's case. Mr. Burtch cites to his long career as a lawyer, his age, the lack of dishonest or selfish motive, a full and fair disclosure to the WSBA, his character and reputation, the delay in the proceedings, and the remoteness in time of the events as mitigating factors that should justify a more lenient disposition of his case.

¶52 The hearing officer found there was insufficient evidence to establish any mitigating factors. First, age is not a mitigating factor because Mr. Burtch's misconduct spans the last 20 years. Next, the record establishes Mr. Burtch's conduct follows a consistent pattern of abuse of the legal system and does not exhibit a positive reputation. Also, any delay in the proceedings or remoteness in time of the events does not mitigate his knowledge and intent to commit numerous ethical violations. Finally, the facts do not demonstrate Mr. Burtch has cooperated with the WSBA but instead show he failed to obey the disciplinary order directing him to make restitution or to testify truthfully in the proceeding.

## APPROPRIATE SANCTIONS

### Proportionality

¶53 The Board should deviate from the presumptive sanction only if the aggravating or mitigating factors are sufficiently compelling to justify a departure. *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9

P.3d 193 (2000). Here, there are no mitigating factors to compel leniency. Mr. Burtch committed multiple acts with many aggravating factors, over a long period of time, justifying disbarment.

¶54 The court will adopt the Board's recommended sanction unless the sanction is not proportionate or the Board was not unanimous in its decision. *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 277-78, 66 P.3d 1069 (2003). Here the Board was unanimous in its decision to adopt the hearing officer's recommendation of disbarment, and based on this court's precedent, disbarment is a proportionate sanction.

¶55 Mr. Burtch asserted, in his brief to the hearing officer, his disbarment would be a disproportionate sanction to that received by other lawyers. Mr. Burtch cites to other cases where lawyers have altered bills to clients and submitted false declarations to the court and were not disbarred. *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 98 P.3d 444 (2004); *Poole*, 156 Wn.2d 196. In these cases, however, attorneys did not have a pattern of misconduct spanning 20 years. Further, *Dynan* and *Poole* had fewer counts of misconduct and mitigating factors, and the Board recommended suspension rather than disbarment.

¶56 The presumptive sanction for five of the six counts of misconduct committed by Mr. Burtch is disbarment. The Board unanimously adopted the hearing officer's conclusions of law, findings of fact, and recommendation of disbarment. There are no mitigating factors suggesting leniency is appropriate in this case. The sanction of disbarment is proportional and appropriate in this case.

## CONCLUSION

¶57 In Mr. Burtch's previous disciplinary proceeding, we found that mitigating factors and Mr. Burtch's profession of learning valuable lessons from the charged misconduct justified leniency. *Burtch*, 112 Wn.2d at 28. It is regrettable that today we are discussing another decade of misconduct

and ethical violations for similar behavior. It is clear that Mr. Burtch did not take the opportunity given him in the last proceeding to rectify his behavior and has caused further injury to his clients. The Board was correct in disbarring Mr. Burtch. We uphold its decision.

SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., and BRIDGE, J. PRO TEM., concur.

Reconsideration denied March 14, 2008.